FRANK LAWSON *v.* WHITEY'S FRAME SHOP
(14394)

DOROTHY CHAREST *v.* WHITEY'S FRAME SHOP
(14833)

Spear, Hennessy and Healey, Js.

Argued May 3—officially released August 20, 1996

*Kirstin B. Coffin*, for the appellants-appellees (plaintiffs).

*Michael D. O'Connell*, with whom was *Julia B. Morris*, for the appellee-appellant (defendant).

HEALEY, J. The plaintiffs in this consolidated action, Frank Lawson and Dorothy Charest, appeal and the defendant cross appeals from the judgment of the trial court rendered after a trial to the court. The plaintiffs' complaints were in two counts. The first counts made claims alleging conversion, while the second counts sought damages for violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes §§ 42-110a through 42-110q. The trial court awarded each plaintiff $50, which amount was trebled, on the first count and $1018 on the second count. The defendant

filed a counterclaim in two counts seeking its fees and costs under General Statutes § 14-150 and the reasonable value of fees, interest and costs allegedly owed to it by the plaintiffs. The trial court awarded the defendant $1168 to be paid by each plaintiff on the second count. On the plaintiffs' appeal, they claim that (1) the trial court awarded insufficient compensatory and CUTPA damages because the awards are against the weight of the evidence and contrary to law[1] and (2) the trial court did not allow them sufficient latitude as pro se litigants. On the defendant's cross appeal, it claims that the trial court improperly determined that it had violated CUTPA.

The following facts are relevant on these appeals. The plaintiffs each incurred over $3000 in fines arising from unpaid parking tickets issued by the city of Hartford. The plaintiffs did not contest the tickets when they were issued. On April 5, 1990, the defendant, acting at the direction of the Hartford police department, towed the plaintiffs' automobiles to its lot. At a hearing pursuant to a city ordinance before the Hartford tax department on April 6, 1990, a hearing officer reduced the amount of the fines the plaintiffs owed by eliminating the additional interest and penalties due. Each plaintiff still owed over $1000, the total of the face amounts of the tickets.[2] Some time later, the plaintiffs contacted the defendant and informed it that they were still contesting the validity of the tickets.

Pursuant to both a city ordinance[3] and the contract between the defendant and the city of Hartford, the

---

[1] The plaintiffs present six different overlapping claims regarding damages. Because the six all address the amount or type of damages or both, in the interest of economy, we will treat them as one claim.

[2] On April 23, 1991, the city issued parking ticket releases to each plaintiff because the fines were deemed to be uncollectable.

[3] Section 22-44 (b) of the Hartford city ordinances provides: "The chief of police shall not authorize or direct the release of any vehicle placed within a vehicle pound pursuant to [the scofflaw ordinance] until such time

defendant was prohibited from releasing automobiles to their owners until all outstanding parking fines were satisfied. The contract specified that when the automobile owner came to retrieve his or her automobile with proper proof of payment of the fines, the defendant was to collect its towing, storage and administrative fees from the automobile owner. The contract also stated that any automobiles not claimed by their legal owners should be stored and disposed of pursuant to General Statutes § 14-150.[4]

The plaintiffs did not pay the parking fines and thus could not retrieve their automobiles from the defend-

as the owner or person in charge of such vehicle shall have: (1) Supplied the chief of police with evidence of his identity and ownership; (2) Satisfied all outstanding municipal parking citations against the subject vehicle to the satisfaction of the chief of police; (3) Paid the cost of removal, impoundment, and administration; and (4) Signed a receipt for such vehicle."

[4] General Statutes § 14-150 provides in pertinent part: "Abandoned or unregistered motor vehicles and motor vehicles which are a menace to traffic. Notice. Removal. Storage. Hearing. Lien. Sale. (a) Any person who abandons any motor vehicle within the limits of any highway or upon property other than his own without the consent of the owner thereof for a period longer than twenty-four hours shall have committed an infraction and shall be fined not less than eighty-five dollars. The last owner of record of a motor vehicle found abandoned, as shown by the files of the department of motor vehicles, shall be deemed prima facie to have been the owner of such motor vehicle at the time it was abandoned and the person who abandoned the same or caused or procured its abandonment.

"(b) Any inspector of the motor vehicle department, any officer attached to an organized police department or any state police officer upon discovery of any motor vehicle, whether situated within or without any highway of this state, which is a menace to traffic or public health or safety, shall take such motor vehicle into his custody and cause the same to be taken to and stored in a suitable place.

\* \* \*

"(g) The owner or keeper of any garage or other place where such motor vehicle is stored shall have a lien upon the same for his storage charges. Unless title has already vested in the municipality pursuant to subsection (d), if the current market value of such motor vehicle as determined in good faith by such owner or keeper does not exceed five hundred dollars and such motor vehicle has been stored for a period of not less than fifteen days, such owner or keeper may, unless an application filed by the owner

ant. On April 24, 1990, allegedly acting pursuant to § 14-150 (g), the defendant sent notice to the department of motor vehicles of its intent to sell both automobiles. On May 4, 1990, the defendant, also allegedly acting pursuant to § 14-150 (g), sent notice to the plaintiffs that their automobiles would be sold. On July 16, 1990, the defendant sold the automobiles for their salvage value of $50 each.

The trial court determined that because the plaintiffs demanded the return of their automobiles while they contested the tickets in a variety of fora, the automobiles were not "abandoned" as that term is used in § 14-150. Because the automobiles were not abandoned, the court reasoned, the defendant did not have the authority to dispose of them. Therefore, the trial court awarded to each plaintiff the $50 salvage value the defendant received for each automobile.[5] This amount was trebled under General Statutes § 52-564.[6] The trial court also awarded to each plaintiff CUTPA damages of $1018 because it concluded that the defendant's improper disposal of the automobiles could cause substantial injury to consumers. These awards were offset by the trial court's determination that each plaintiff owed the defendant $1168 in towing and storage fees.

pursuant to subsection (d) of this section is pending and the owner of such motor vehicle has notified such owner or keeper that such application for hearing has been filed, sell the same for storage and towing charges owed thereon, provided a notice of intent to sell shall be sent to the commissioner and the owner of such motor vehicle, if known, five days before the sale of such vehicle. . . ."

[5] The trial court awarded the $50 under the plaintiffs' first count of conversion. The trial court refused to award compensatory damages for lost wages or for the alleged full value of the automobiles because, the court asserted, the plaintiffs failed to produce any evidence to substantiate those claims for damages.

[6] General Statutes § 52-564 provides: "Treble damages for theft. Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

## I

### A

The plaintiffs first claim that the amounts of the trial court's compensatory and CUTPA awards were against the weight of the evidence and contrary to law. Even though the trial court awarded compensatory and CUTPA damages, the plaintiffs incongruously assert that the trial court improperly "fail[ed] to award compensatory damages, punitive damages and attorney's fees . . . ." In addition, the plaintiffs claim that the trial court improperly awarded damages to the defendant. We disagree.

First, the plaintiffs contend that they had proved greater compensatory damages than those awarded by the court.[7] They argue that the trial court required them to prove their damages with too high a degree of specificity. To be precise, the plaintiffs assert that they should have also received damages to compensate them for the book value of the automobiles and wages they allege they lost as a result of being deprived of the use of their automobiles. "It is axiomatic that a claimant seeking damages bears the burden of proving, with reasonable certainty, those damages sustained as a result of his injury. *Fox* v. *Mason*, 189 Conn. 484, 488, 456 A.2d 1196 (1983); *Pacelli Bros. Transportation, Inc.* v. *Pacelli*, 189 Conn. 401, 410, 456 A.2d 325 (1983); *Johnson* v. *Flammia*, 169 Conn. 491, 500, 363 A.2d 1048 (1975)." *Conaway* v. *Prestia*, 191 Conn. 484, 493–94, 464

---

[7] The trial court awarded compensatory damages under the plaintiff's first count of conversion. A party may also claim compensatory damages under CUTPA. See General Statutes § 42-110g (a) (persons suffering ascertainable loss of money or property may bring action to recover actual damages). Even under CUTPA, however, a plaintiff "must present evidence providing the court with a basis for a reasonable estimate of the damages suffered." *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990). Therefore, our discussion of compensatory damages will relate to the plaintiffs' common law and statutory remedies for actual damages.

A.2d 847 (1983). "The trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Citations omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 27–28, 664 A.2d 719 (1995). "The assessment of damages is peculiarly within the province of the trier and the award will be sustained so long as it does not shock the sense of justice. The test is whether the amount of damages awarded falls within the necessarily uncertain limits of fair and just damages." (Citations omitted; internal quotation marks omitted.) *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 174–75, 530 A.2d 596 (1987).

A review of the transcript reveals no evidence to support the plaintiffs' claims for greater compensatory damages. First, Charest testified that not only did she initially have another vehicle to use in her weekend job as a produce vendor, but that in previous years she had never shown a profit in this endeavor. Second, Charest testified that Lawson was not able to work from 1990 to 1992 as a result of losing the use of his automobile. The plaintiffs, however, offered no other evidence to substantiate the claim for Lawson's lost wages. Finally, the plaintiffs did not offer any evidence regarding the book value of either automobile. In light of the paucity of evidence relating to actual damages, therefore, the trial court clearly did not abuse its discretion in awarding compensatory damages of $50 for each car.

As noted previously, the trial court trebled its compensatory damage award to the plaintiffs pursuant to § 52-564. In discussing the award, however, the trial court stated that "[s]ection 52-564 may . . . be inapplicable because the defendant was acting under a claim of right . . . ." We conclude that § 52-564 is inapplicable.

Statutory theft under § 52-564 "is synonymous with larceny under General Statutes § 53a-119." *Discover*

*Leasing, Inc* v. *Murphy,* 33 Conn. App. 303, 309, 635
A.2d 843 (1993), citing *Lauder* v. *Peck,* 11 Conn. App.
161, 165, 526 A.2d 539 (1987). Pursuant to § 53a-119, "[a]
person commits larceny when, with intent to deprive
another of property or to appropriate the same to him-
self or a third person, he wrongfully takes, obtains or
witholds such property from an owner." By comparison,
"[c]onversion is an unauthorized assumption and exer-
cise of the right of ownership over goods belonging to
another, to the exclusion of the owner's rights." *Dis-
cover Leasing, Inc* v. *Murphy,* supra, 309, citing *Devitt*
v. *Manulik,* 176 Conn. 657, 660, 410 A.2d 465 (1979). In
addition, conversion requires that the owner be harmed
as a result of the unauthorized act. *Devitt* v. *Manulik,*
supra, 660. Conversion may arise subsequent to an ini-
tial rightful possession. *Maroun* v. *Tarro,* 35 Conn. App.
391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648
A.2d 164 (1994). Conversion can be distinguished from
statutory theft as established by § 53a-119 in two ways.
First, statutory theft requires an intent to deprive
another of his property; second, conversion requires
the owner to be harmed by a defendant's conduct.
Therefore, statutory theft requires a plaintiff to prove
the additional element of intent over and above what
he or she must demonstrate to prove conversion.[8] In
the present case, the trial court did not find that the
defendant intended to deprive the plaintiffs of their
automobiles. In fact, the trial court stated that "the
defendant was acting under an honestly held claim of
right." Therefore, the plaintiffs' proof that the defendant
converted their property cannot, on its own, support a
finding of statutory theft under § 52-564. The trial court,

---

[8] In addition, a plaintiff must satisfy a higher standard of proof, namely,
clear and convincing evidence, in order for a trial court to award treble
damages pursuant to § 52-564, while "[i]t is ordinarily sufficient in civil cases
to prove the existence of a criminal act by a preponderance of the evidence."
*Schaffer* v. *Lindy,* 8 Conn. App. 96, 104, 511 A.2d 1022 (1986).

therefore, improperly applied § 52-564 to the facts of this case.

Although the defendant in its cross appeal has not specifically raised this issue of whether the trial court properly awarded treble damages, Connecticut courts have concluded that the misapplication of a statute constitutes plain error and therefore we "may in the interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 4185. For instance, our Supreme Court held that a trial court's failure to apply a pertinent statute is plain error even though neither party raised the issue either at trial or before the Supreme Court. *Stoni* v. *Wasicki*, 179 Conn. 372, 377, 426 A.2d 774 (1979). Similarly, in *State* v. *Preyer*, 198 Conn. 190, 199, 502 A.2d 858 (1985), the court determined that a jury charge that "demonstrates that the trial court has overlooked the applicable statute justifies consideration as plain error." See also *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 181 Conn. 607, 609, 436 A.2d 1259 (1980) ("oversight of a clearly applicable statute can be considered plain error"). Here, the trial court awarded treble damages pursuant to § 52-564 even though the plaintiff had not proven one of the essential elements of the statute. The trial court, therefore, improperly applied a statute that was not pertinent to facts it had found. This constitutes plain error and we vacate the trial court's award of treble damages but leave undisturbed its award of compensatory damages of $50.

The plaintiffs next assert that the trial court should have awarded punitive damages and attorney's fees even though they acknowledge that the trial court did award CUTPA damages and they assert no other bases on which to claim punitive damages or attorney's fees. They also state that the trial court, in determining their CUTPA damages, improperly concluded that they "did not merit a large damage award." The trial court did

not specifically identify whether the plaintiff's CUTPA award was for attorney's fees or punitive damages.[9] Therefore, we will discuss both.

General Statutes § 42-110g (d) provides that a trial court "may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorney's fees based on the work reasonably performed by an attorney . . . ." "The trial court has discretion whether to award attorney's fees under CUTPA and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 36, 663 A.2d 432 (1995), quoting *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987). Assuming, arguendo, that the trial court did not award attorney's fees, we conclude that, because the plaintiffs were pro se at the time of trial and because they did not present any evidence regarding any other attorney's fees, the trial court did not commit either a manifest abuse of discretion or an injustice.

General Statutes § 42-110g (a) provides that "[t]he court *may, in its discretion,* award punitive damages . . . as it deems necessary or proper." (Emphasis added.) See *Gargano* v. *Heyman*, supra, 203 Conn. 622. "[P]unitive damages are available when there is evidence of a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . ." (Citations omitted; internal quotation marks omitted.) *Staehle* v. *Michael's Garage, Inc.*, 35 Conn. App. 455, 462–63, 646 A.2d 888 (1994), quoting *Gargano* v. *Heyman*, supra, 622; *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 54, 634 A.2d 870 (1993). As

---

[9] The plaintiffs did not file a motion for articulation pursuant to Practice Book § 4051.

noted, the trial court did not specify whether the CUTPA damages were for attorney's fees or punitive damages. The trial court did state, however, that the defendant's practice of disposing of unclaimed scofflaw vehicles could cause substantial injury to consumers. Therefore, for the purposes of our discussion here, we will treat the $1018 in CUTPA damages as punitive damages.

Section 42-110g (a) does not provide a method for determining punitive damages. Courts have awarded punitive damages in amounts equal to actual damages or multiples of the actual damages. *Staehle* v. *Michael's Garage, Inc.*, supra, 35 Conn. App. 463. Our Supreme Court has upheld a punitive damage award where there was extensive evidence as to issues relevant to punitive damages, including a reckless indifference to the rights of others. *Tessmann* v. *Tiger Lee Construction Co.*, supra, 228 Conn. 55. Here, the trial court awarded punitive damages that are over twenty times the amount of actual damages and it determined that the defendant's conduct was not egregious.[10] Therefore, we conclude that the trial court did not abuse its discretion in its award of punitive damages.

Next, the plaintiffs claim that the trial court improperly determined that they owed the defendant for towing and storage fees pursuant to the defendant's counterclaim. They assert that under the contract between the defendant and the city of Hartford, the defendant could have recovered the storage charges from the city. The plaintiffs point to language in the contract defining "city storage" pursuant to which the

[10] The trial court determined that the defendant "was caught in a dilemma not entirely of its own choosing because of the provisions of its contract with the city. It could not release the cars without proof the tickets were paid and faced the prospect of holding these cars for an indefinite period of time. . . . [T]he cars were properly towed to and lawfully retained by the defendant prior to the disposal of the cars."

city will pay the defendant one dollar a day in storage fees. This same definition, however, states that city storage occurs where "the City has *elected to* encumber such charges." (Emphasis added.) The plaintiffs did not present any evidence that would indicate that the city had or would have elected to be responsible for such charges. The contract also states that where an automobile has been towed for failure to pay parking fines, "[t]he City shall not be liable for any storage fees." Further, "storage fee" is defined as "that sum chargeable to the owner of a motor vehicle, towed under the direction of the Hartford Police Department . . . [and] chargeable to the owner of the vehicle." The plaintiffs concede that the defendant towed the automobiles at the direction of the Hartford police department. Therefore, the storage and towing charges are chargeable to the plaintiffs. The plaintiffs do not dispute that the trial court properly calculated the amount of damages they owe the defendant. Thus, the award of damages to the defendant was proper.

B

The plaintiffs' next claim that the trial court did not afford them sufficient latitude as pro se litigants. They argue that the trial court could have concluded that there was sufficient evidence of their lost employment opportunities to have awarded greater compensatory damages and that the trial court did not allow them to present all of their evidence.

"Although we will not entirely disregard our rules of procedure, we do give great latitude to pro se litigants in order that justice may be done." *Lundborg* v. *Lundborg*, 15 Conn. App. 156, 160, 543 A.2d 783, cert. denied, 209 Conn. 818, 515 A.2d 756 (1988). " '[T]he right of self-representation [however] provides no attendant license not to comply with relevant rules of procedural and substantive law.' " *State* v. *Krijger*, 33 Conn. App. 49,

55, 633 A.2d 310 (1993), cert. denied, 228 Conn. 917, 636 A.2d 849 (1994), quoting *Galland* v. *Bronson*, 204 Conn. 330, 334–35, 527 A.2d 1192 (1987).

As discussed previously, the plaintiffs presented no evidence to substantiate their claims for lost wages. While the trial court should allow pro se litigants latitude, such latitude does not extend to inferring damages in an evidentiary vacuum. In addition, a careful review of the transcript reveals numerous examples of the trial court's assisting the plaintiffs in the organization and presentation of their cases as well as allowing them time to find and review documents. Therefore, the trial court did grant the plaintiffs sufficient latitude in the presentation and evaluation of their evidence.

We also conclude that the trial court afforded the plaintiffs sufficient time to present all of their evidence.[11] Even if we were to construe the plaintiff's dia-

---

[11] The plaintiffs rely on the following exchange to assert that the trial court did not allow them to present additional evidence:

"The Court: Do you have any other evidence you want to present to the court?

"Ms. Charest: Not at present.

"Mr. Lawson: Not at present.

"Ms. Charest: I have to go back all through this stuff again tomorrow.

"The Court: You know the trial was scheduled for today.

"Ms. Charest: I know, I just—

"The Court: It's going to, you know, it's going to finish today. I tried to really bend over backwards today.

"Ms. Charest: Yes, you did.

"The Court: And I really tried to.

"Ms. Charest: And I appreciate it.

\* \* \*

"The Court: And I have to ask you, is there any other evidence that you plan to present or want to present and then I'll decide whether you should have a right to do it.

"Ms. Charest: No, I don't think so. Not at this time, Your Honor.

"The Court: Okay. . . . How about you, Mr. Lawson? In other words, I'm not trying to intimidate you. If you want to present other evidence, you tell me. I may say to you, I don't think you have a right but I don't want to frighten you into not making a request."

logue with the court to be a request for a continuance that the court denied, "such denial is within the discretion of the trial judge and will be set aside only if a clear abuse of discretion is shown. . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Krijger*, supra, 33 Conn. App. 55. We cannot conclude that the trial court abused its discretion by refusing to extend the trial.

Finally, we note that the trial court, in its memorandum of decision, stated that "[a]lthough the [CUTPA] claim was not specifically pressed at trial by these pro se plaintiffs, the court regards this claim as still being in the case." Therefore, we conclude that the trial court did grant the plaintiffs sufficient latitude as pro se litigants.

## II

The defendant cross appeals claiming that the trial court improperly determined that it had violated CUTPA by disposing of the plaintiffs' automobiles. The defendant asserts that the city had the right, pursuant either to its police powers or the Home Rule Act,[12] to direct the defendant, by means of their contract, to dispose of the cars pursuant to § 14-150.[13] Therefore, the defendant reasons, it relied in good faith on the

[12] General Statutes § 7-194 provides in pertinent part: "[A]ll towns, cities, or boroughs which have a charter or which adopt or amend a charter under the provisions of this chapter shall have the following specific powers in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes: To manage, regulate and control the finances and property, real and personal, of the town, city or borough and to regulate and provide for the sale, conveyance, transfer and release of town, city or borough property and to provide for the execution of contracts and evidences of indebtedness issued by the town, city or borough."

[13] See footnote 3.

authority and direction of the city to dispose of the automobiles. Alternatively, the defendant argues that under § 42-110c,[14] its actions constitute an exception to CUTPA rules.

As an initial matter, we agree with the defendant, as the plaintiffs concede, that the city properly enacted its parking violation ordinances under the Home Rule Act. See *New Haven Commission on Equal Opportunities* v. *Yale University*, 183 Conn. 495, 499, 439 A.2d 404 (1981) ("a municipality [has] such powers as are necessary to enable it to discharge its duties and carry into effect the objects and purposes of its creation"). The proper promulgation of those ordinances does not, however, immunize those parties with whom the city has contracted to effectuate those ordinances against all civil liability. While the city obviously had the power to enact such ordinances, the city and its agents must nevertheless still adhere to all other laws, including the limitations of § 14-150, in executing those ordinances. Under the circumstances here, therefore, the defendant's claim that the city could direct it, pursuant to the Home Rule Act, to dispose of the plaintiffs' automobiles is unavailing. The contract between the city and the defendant is the sole method by which the city could transfer its authority to the defendant. The contract, therefore, necessarily defines the scope of that authority conferred by the city on the defendant.

The contract between the defendant and the city sets forth the reasons the city may have for directing the defendant to tow and store a vehicle. These include clearing vehicles during emergencies such as snow-

[14] General Statutes § 42-110c provides in pertinent part: "(a) Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state . . . .

"(b) The burden of proving exemption, as provided in this section, from the provisions of this chapter shall be upon the person claiming the exemption."

storms and removing vehicles involved in accidents, vehicles to be held for evidence, scofflaw vehicles and vehicles in other situations that the police may designate. The defendant asserts that it properly relied on the portion of its contract with the city that specifies that "[f]or vehicles not claimed by their legal owners, the contractor shall store and dispose of said vehicles as provided by section 14-150 of the Connecticut Statutes." The trial court concluded, however, that, since the plaintiffs' cars were not abandoned[15] as defined in § 14-150 (a), the statute did not apply in this case. The defendant responds by asserting that the language of the contract that states that the defendant "shall store and dispose of said vehicles" directs the court only to 14-150 (g) and that the rest of the statute does not apply. Further, they argue, if § 14-150 applies in its entirety, then the automobiles may be deemed to have been abandoned. We disagree.

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citations omitted; internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 277–78, 654 A.2d 737 (1995). " 'In such a situation our scope of review is plenary' . . . ." *De Leonardis* v. *Subway Sandwich Shops, Inc.*, 35 Conn. App. 353, 357, 646 A.2d 230, cert. denied, 231 Conn. 925, 648 A.2d 162 (1994). When only one interpretation of a contract is possible, "the court need not look outside the four corners of the contract . . . ." *Hedberg* v. *Pantepec International, Inc.*, 35 Conn. 19, 28, 645 A.2d 543, cert. granted on other grounds, 231 Conn. 927, 648 A.2d 879 (1994) (appeal withdrawn February 21, 1995). We conclude that the language of the contract between the defendant

---

[15] See part IA.

and the city is not ambiguous. Therefore, its proper interpretation is a matter of law.

The contract states that the defendant shall store and dispose of unclaimed vehicles as provided by § 14-150. The contract does not specify that the defendant is to dispose of vehicles only as provided by subsection (g) of the statute. Therefore, given the clear and unambiguous language of the contract, § 14-150 applies in its entirety.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is a well established rule of statutory construction that when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . . Courts should not read into clearly expressed legislation provisions which do not find expression in its words." (Citations omitted; internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 830–31, 614 A.2d 414 (1992). Section 14-150 (a) applies to motor vehicles abandoned by a person "within the limits of any highway or upon property other than his own"; a motor vehicle that is "a menace to traffic"; § 14-150 (b); "a motor vehicle without proper registration"; § 14-150 (c); or certain motor vehicles with "no registration marker plates or invalid marker plates." General Statutes § 14-150 (d). As the trial court found, there is no provision in the statute that applies exclusively to scofflaw vehicles. The defendant, therefore, pursuant to its contract with the city, could properly dispose of only those types of vehicles specifically enumerated by § 14-150 and not those vehicles towed because of outstanding parking violations. Because the plaintiffs' automobiles were towed due to outstanding parking violations, we conclude that the defendant acted outside the scope of its contract with the city as

defined by § 14-150. In short, because § 14-150 does not contemplate the disposal of scofflaw vehicles, the contract between the city and the defendant by necessity could not have provided for the disposal of such vehicles.[16]

We also note that the city ordinances do not specify in any way that automobiles towed for excessive parking violations may be disposed of pursuant to § 14-150. While we decline to state that such a reference in the ordinances would have made the defendant's conduct proper, at least it would have put the owners of vehicles towed pursuant to those ordinances on notice that their vehicles may be sold in order to compensate a towing contractor's towing and storage fees.

The defendant next argues that its actions at the direction of the city are exempt from CUTPA. The defendant reasons that, because municipalities are generally immune from CUTPA liability under § 42-110c,[17] it is immune as well. We decline to address this claim because, as we have determined, the defendant's actions were outside the scope of its contract with the city. The disposal of the plaintiffs' automobiles, therefore, could not have been at the direction of the city. Thus, the defendant is not exempt from CUTPA liability under § 42-110c.

The judgments are reversed only as to the award of treble damages on the plaintiffs' first counts and the

---

[16] The defendants rely on *Dutch Point Credit Union, Inc.* v. *Caron Auto Works, Inc.*, 36 Conn. App. 123, 131, 648 A.2d 882 (1994), for the proposition "§ 14-150 allows for the sale of personal property that is *deemed abandoned*." (Emphasis added.) That case, however, is distinguishable on its facts. The automobile in question in *Dutch Point* was towed after a traffic accident. The automobile, therefore, was a "menace to traffic," § 14-150 (b), and consequently the statute and its provision for disposal of the automobile applied.

[17] See *Connelly* v. *Housing Authority*, 213 Conn. 354, 567 A.2d 1212 (1990).

cases are remanded with direction to render judgments as on file except as modified to award only compensatory damages of $50 on the first count in each case.

In this opinion the other judges concurred.