[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose mechanic's liens filed by the plaintiff, Charles Jackson, against property owned by the defendant, Robert A. Fortunato.[1] The plaintiff alleges that he provided goods and services to the defendant commencing on July 27, 1986, in connection with the construction of a new home for the defendant at 30 Carrington Drive, Greenwich. The plaintiff further alleges in his complaint that he completed his work on September 1, 1987, and that he is owed approximately $22,500. The plaintiff filed two mechanic's liens, one in Greenwich on November 9, 1987, and the other in Stamford on November 16, 1987.[2]
CT Page 3926
In his revised answer dated June 13, 1996, the defendant denied owing any money to the plaintiff and left the plaintiff to his proof regarding the date on which he completed his work and services. The defendant did not file any special defenses, but did file an amended counterclaim dated August 28, 1996. The counterclaim consists of two counts. In the first count, the defendant alleges that he entered into a written contract with the plaintiff dated May 5, 1986, pursuant to which the plaintiff agreed to construct a single-family residence for the defendant "in a workmanlike manner" for approximately $254,000. The defendant further alleges that the plaintiff constructed the residence in a negligent and unworkmanlike manner, resulting in numerous defects in both the interior and exterior of the residence. The defendant seeks monetary damages because he has incurred or will incur costs to "correct and cure" the alleged defects.
In the second count of the counterclaim, the defendant alleges that the plaintiff also breached the contract by failing to "substantially complete" the project by March 15, 1987, as called for in the contract. The defendant claims that this delay caused him to pay additional interest on his construction loan.
In addition to denying the material allegations of the counterclaim, the plaintiff filed several special defenses, viz., that the defendant's counterclaim violates the statutes of limitations for both negligence actions as set forth in General Statutes § 52-584, and for breach of contract actions in General Statutes § 52-576; that the defendant failed to minimize his damages; that the defendant waived any defects because he accepted the plaintiff's work; and that the defendant is estopped from complaining about the work because he failed to raise timely objection thereto.
A bench trial was held over the course of several days during which the contract between the plaintiff and the defendants was introduced into evidence. This contract is labeled as an agreement between "Owner And Construction Manager" and provides that for a fixed fee the plaintiff will review the plans, develop a construction schedule, analyze bids, recommend the awarding of contracts, monitor costs, and generally coordinate the construction project, including the work of the various contractors, on behalf of the defendant. CT Page 3927
The first issue presented by the parties is the validity of the mechanic's liens that the plaintiff is seeking to foreclose. The evidence indicated that the defendant took occupancy of the subject premises in July, 1987, and that the town of Greenwich issued a certificate of occupancy on August 15, 1987. The plaintiff claims that he worked on the job until September 1, 1987, and that the filing of his liens complied with General Statutes § 49-34. This statute requires a lienor to file a certificate "within ninety days" after ceasing work. The defendant claims that the ninety days should run from the granting of the certificate of occupancy, which would mean that the lien filed in Stamford on November 16, 1987, was one or two days late, since the certificate of occupancy, as noted previously, was issued on August 15, 1987.
If a certificate of occupancy truly marked the commencement of the period for filing a lien, certainly some interesting issues would ensue in light of the fact that the building permit and certificate of occupancy were both issued by the town of Greenwich, the residence itself is in Greenwich, where the lien was timely filed, and the vast majority of the four acre plot is in that town, with only a small slice of land in Stamford. However, the certificate of occupancy issued in this case to the defendant provides only that the work complied with all state and local "laws and ordinances." The defendant has not cited any case that holds that such a certificate conclusively establishes the starting date for a timely filing under General Statutes § 49-34, which refers to "work" on the part of the lienor. Compliance with laws and ordinances, on the one hand, and "work," on the other, appears to involve different concepts. It has also been noted that while obtaining a certificate of occupancy "may be evidence of substantial performance, it is not dispositive of the question." Miller v. Bourgoin, 28 Conn. App. 491, 496,613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 825 (1992). By analogy, obtaining such a certificate does not dispose of the question as to when a lienor ceased work.
In that regard, the evidence disclosed that the plaintiff did perform certain work at the defendant's home after the issuance of the certificate of occupancy. This work, however, was characterized by the defendant as "trivial" in nature. He citedMartin Tire Rubber Co. v. Kelly Tire Rubber Co.,99 Conn. 396, 122 A. 102 (1923), for the proposition that trivial work or minor repairs do not constitute "work" within the meaning of the mechanic's lien statute. There were, according to the evidence, a CT Page 3928 number of "punchlist" items that the plaintiff completed after the certificate had been issued on August 15, 1987.[3] The performance of some fifteen or so punchlist items at the specific request of the defendant does not appear to fall within the definition of "trivial" work as discussed in Martin Tire RubberCo., supra. The defendant's claim that the liens were not filed in a timely fashion is therefore rejected because work was performed after August 15, 1987, and within ninety days of filing the liens in Greenwich and in Stamford.
The evidence indicates that the defendant paid the plaintiff all that was billed and owed except for the final invoice of October 19, 1987, in the amount of $22,427. This sum included $8,000 for construction management and the balance for work personally performed by the plaintiff. In addition, section 10.6 of the contract provides that "if the scope of the project is changed materially, the amounts of compensation shall be equitably adjusted." The plaintiff claims that the scope of the project had increased by about $60,000 and that he was entitled to 10% or $6,000, which percentage is in line with the calculation of the management fee in the contract and does not appear to be inequitable. Since the plaintiff has established that he substantially performed his obligations under the management contract, and a certificate of occupancy was issued, the debt of the defendant owed to the plaintiff for purposes of this foreclosure action is established as $22,427.
The contract further provides in section 10.5 that interest is payable at the rate of 10% per year on any unpaid amount. Interest on $22,427 at that rate from June 20, 1987 to the date of this judgment amounts to $21,243, for a total debt of $43,670 due the plaintiff.
Regarding the counterclaim filed by the defendant, the first count refers to defective workmanship. Although the phrase "negligent" is mentioned in the counterclaim, the gravamen of the first count is an alleged breach of contract. A counterclaim was first filed in November, 1989, and hence the statute of limitations for the contract actions, six years in accordance with General Statutes § 52-576, had not expired for work performed in 1987, contrary to the plaintiff's assertion.
However, the plaintiff is correct that the contract with the defendant absolves him of all liability with respect to unworkmanlike performance by the various contractors, who were CT Page 3929 hired and paid by the defendant. Section 1.2.6 specifically provided that the plaintiff as construction manager would "not be responsible for construction means, methods, techniques, sequences and procedures employed by Contractors in the performance of their Contracts, and shall not be responsible for the failure of any Contractor to carry out Work in accordance with the Contract Documents." Thus, the plaintiff cannot be held liable under his construction manager contract with the defendant for any poor workmanship on the part of the various contractors. The language to this effect is unambiguous and the construction of the contract is therefore a matter of law. Lawson v. Whitey'sFrame Shop, 42 Conn. App. 599, 614, 682 A.2d 1016 (1996).
It should also be noted that the defendant, in his capacity as owner of the subject premises, entered into contracts with the various contractors and artisans, paid them himself, and never sued any of these contractors for faulty work. In addition, the work performed by the plaintiff was based on plans prepared by the defendant's architect.
The evidence further disclosed that the plaintiff himself performed a rather substantial amount of work on the subject premises, which work was authorized by the contract with the defendant under the heading "direct labor by the construction manager personally at the rate of $24/hour." The evidence indicates that the defendant paid the plaintiff in full for his work up until June, 1987, when he ceased making any further payments to the plaintiff. The defendant did not submit any credible evidence that the framing work that the plaintiff himself performed, as contrasted with the work performed by the various contractors, was defective. There is a reference in the report of the defendant's expert, Everett P. Loppacker, to inadequate "framing technique" which allegedly resulted in "readjustments and moving of framing work." There is no attempt in this report or in the defendant's presentation, however, to distinguish framing work personally performed by the plaintiff from work performed by any other framer or framers. This is understandable in view of the fact that the expert's report is dated almost nine years after the framing work had been completed. Moreover, the defendant did not offer any evidence of the cost of correcting any particular framing work that the plaintiff himself personally performed, and hence the extent of any damages sustained by the defendant in this regard was not adequately substantiated. There was no evidence, for example, that the defendant had corrected any of the framing personally CT Page 3930 performed by the plaintiff or the cost thereof.
The defendant contends that the project cost, approximately $362,000, was substantially more than $254,000, the amount originally budgeted. However, the evidence disclosed that this increase was primarily due to the defendant expanding the scope of the project. The defendant also claims that the plaintiff did not adequately perform each and every obligation he had under the manager contract. The plaintiff did prove that he substantially complied with his obligations as a construction manager, that the defendant moved into the house, and that a certificate of occupancy was issued. In any event, the defendant failed to prove any monetary damages incurred or sustained as a result of any particular breach of the contract by the plaintiff. Hence, the defendant cannot recover on the first count of his counterclaim.
The second count of the counterclaim refers to the provision in the contract that the work would be completed by March 15, 1987. As indicated previously, the defendant did not move into the home until July of that year, and the certificate of occupancy was not issued until August, 1987. The plaintiff points out that this count in the counterclaim and the allegation that the project was not completed on time was asserted for the first time in 1996, well past the six year statute of limitations for contract actions previously referred to. The counter argument is that this claim regarding the timeliness of performance relates back to the original counterclaim and is therefore timely.
In any event, the contract between the parties refers to "substantial completion" by March 15, 1987, and most importantly, does not refer to time being of the essence. "Generally, [w]here a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intend that time for performance be of the essence. . . . Because delays are typical in transactions involving . . . building contracts, time is ordinarily not of the essence in these contracts. . . . The resolution of whether it is part of the contract involves a question of the intent of the parties, to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto." (Citations omitted; internal quotation marks omitted.) Miller v. Bourgoin, supra,28 Conn. App. 498. CT Page 3931
The construction management contract in this case does not contain a provision making time of the essence, nor was any proof submitted that defendant subsequently notified the plaintiff that time would be of the essence. There is nothing discernible in the "conduct" of the parties or the "negotiation" of the contract that would warrant a finding that time was of the essence. The reference in the contract to completion requires only that the plaintiff shall perform his services "as expeditiously as is consistent with reasonable skill and care and the orderly progress of the project."
Moreover, the project did not commence on May 15, 1987, the starting date in the contract. The plaintiff testified plausibly that the project did not start until June of 1987, because the defendant had not cleared his property sufficiently for work to begin. Also, during the course of the project, the defendant ordered certain changes which contributed to the delay in finishing the job. Finally, the defendant did not prove exactly how or to what extent he was damaged by the delay in occupying the premises and obtaining a certificate of occupancy. Hence, the defendant cannot recover on this count of the counterclaim.
Therefore, judgment enters in favor of the plaintiff with respect to his action to foreclose his mechanic's liens, and the debt is found to be $43,670, including interest. The matter should now be claimed to the foreclosure short calendar for the purpose of establishing the type of foreclosure, date, advertising and other pertinent details. Judgment enters in favor of the plaintiff with respect to the counterclaim filed by the defendant. Costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 8th day of April, 1997.
William B. Lewis, Judge