[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action in five counts. The first count alleges a breach of contract. The second count claims unjust enrichment. The third count claims conversion of personal property. The fourth count alleges larceny and in the fifth count the plaintiff claims a violation of the Connecticut Unfair Trade Practices Act.
The defendant, by special defenses claims the plaintiff has committed fraud, has violated the Connecticut Unfair Trade Practices Act, and denies the plaintiff's claim of conversion. The defendant has also filed a counterclaim for the value of work he claims to have done and for which he claims he was not compensated.
Factual Background and Findings
The plaintiff Richard L. Taylor (Taylor) was the owner of a house located at 8 Waterfall Road in Ashford, Connecticut. The house was built in approximately 1840. The plaintiff has lived abroad since approximately 1977 and for many years has held a teaching position at the University of Oman (in Oman). As a general rule he would come to Connecticut during the summer vacation period and spend at least a part of the summer time at the Ashford property. Until 1991 he rented the house, usually to University of Connecticut students during the school year but in 1991, because of damage being caused by tenants and problems in collecting rent, he stopped renting the property. He intended to renovate and remodel the property over time as finances permitted. Some actual remodeling was done in 1992 to the first floor level, primarily the kitchen and bathroom. The second floor (bedroom area) was left as is.
In the fall of 1993, the plaintiff asked a friend of his, Beverly Carlson (Carlson), who lived nearby, to watch the property and make arrangements for necessary upkeep and maintenance. Even prior to that Carlson had been knocking down CT Page 10774 interior walls on the first floor as part of the anticipated remodeling.
In December 1993, Carlson received a telephone call from the defendant, Douglas Jann (Jann). Jann had been a tenant of Carlson's for about one year in 1991-1992 in an apartment which Carlson herself owned. Jann explained that he and his wife were separating and he was looking for a place to stay. They discussed Taylor's house and Carlson told Jann he could stay there, without paying rent or utilities while it was being renovated. She explained that the property was in the process of being renovated, and given its condition, she was agreeable to letting Jann stay here. There was some benefit to the plaintiff by simply having an otherwise vacant house occupied. Jann moved into the property on January 1, 1994. A few weeks later Jann spoke to Carlson about doing the renovation work himself provided the plaintiff supplied the materials and tools needed for any work. Jann had carpentry experience and was capable of doing that type of work. There was, however, no understanding as to what the renovations were to be, i.e., how the rooms would be laid out, the type of ceilings to be installed, and the prioritizing of work to be done. While Carlson had floated some ideas, she needed approval from Taylor, who was in Oman. In short, there was uncertainty as to what, and when, any work was to be done. Carlson did tell Jann, however, that the basement had to be shored up and the barn door needed repairs, and those items were contemplated to be done while the plaintiff decided on the other areas.
It was also understood that Jann would work at the project after his regular day job — putting in approximately 3-4 hours per day. It was apparent that remodeling would take several years to complete under the terms and conditions. After Jann moved in, he spent approximately 75 hours in cleaning up demolition debris in the house, in completing the tearing down of wall board and generally making the house habitable. The downstairs area was cluttered with demolition debris, and wires were exposed and hanging. Indeed, the Building Official for Ashford questioned if the Health Department would have permitted the property to be occupied given the condition it was in. Other factual findings will be discussed as needed.
There was no meeting of the minds as to the essential terms of a contract, at least until July of 1994 when Taylor returned from Oman. At that time he spent about one week in Ashford living CT Page 10775 in the house with Jann. Taylor and Jann had more detailed discussions about their arrangement. Taylor decided that repairing the roof was a top priority. It was also agreed that Jann's work was worth $25 per hour. It was further agreed that Taylor would provide necessary tools and Taylor understood Jann would keep the tools once all the work was done which Taylor expected would take approximately four years. (Jann conversely, testified that once his hourly rate of $25 equaled the value of a tool, the tool belonged to him). Taylor bought tools approximately $1000 in value, which Jann took with him when he left the property. Neither arrangement between Carlson and Jann, nor Taylor and Jann, was in writing.
FIRST COUNT: (Breach of Contract)
Connecticut General Statutes § 52-550 (a) (5) requires that an agreement that is not to be performed within one year from the making thereof, be in writing and signed by the party to be charged, in order to be enforceable. It is clear that any contract in this case was to be performed after a period of one year. As such, it cannot be enforced as it violates the Statute of Frauds. Breen v. Phelps, 186 Conn. 86 (1982).
Accordingly, the plaintiff's claim for damages under the theory of breach of contract is denied.
The plaintiff's claims for damages he claimed was caused when Jann vacated the premises on September 30, 1994 without securing same is denied. Jann had removed a portion of the roof during the month of August and had covered it with a tarpaulin which was nailed down. The tarpaulin had not leaked for the several weeks it was in place before Jann vacated (although it had rained heavily on at least one occasion during that time). The roof actually had been leaking badly before it was removed. In any event, the tarpaulin was in place when Jann left and he had no obligation to do more.
SECOND COUNT: (Unjust Enrichment)
Carlson gave Jann $200 in cash which he was to use for material necessary to repair the barn door. Jann neither bought any material (as the type of repair was uncertain) nor did he return the money. The plaintiff is entited to recover this amount from Jann. CT Page 10776
Carlson bought miscellaneous tools and equipment for Jann at his request. While the exact amount she paid for these tools was not proven, the defendant acknowledged in his testimony that their value when new was approximately $1000. He took those tools and equipment with him when he left, believing they were due him as compensation for the work he performed. Since there was no enforceable contract, Jann was not entitled to retain them and the plaintiff is entitled to recover their value ($1000) from the defendant.
The plaintiff also claims that Jann took antiques from the property when he vacated (without permission-with a value of approximately $2000). The defendant Jann claims there were scattered pieces of old furniture and a water damaged old rolled up rug when he moved in, that Carlson told him he could have any of it he could make use of as it was going to be taken to the dump. He used, and took with him when he left, a braided rug, an end table, lamps and a bed frame. Carlson testified that these items were not gifts but she did tell Jann he could use them if he wished. The Court concludes Carlson's memory of the arrangement to be credible on this issue. Jann still has the items and is ordered to return them forthwith to the plaintiff or his agent — Beverly Carlson. There was no credible evidence as to the value of these pieces and ordering their return is, under the circumstances, the most appropriate alternative.
THIRD COUNT: (Conversion)
Damages for the wrongful taking of the tools has been discussed above and damages awarded.
FOURTH COUNT: (Larceny)
The plaintiff has not shown a larceny was committed. Statutory larceny requires a criminal intent to deprive another of his property. Lawson v. Whitey's Frame Shop, 42 Conn. App. 599,606 (1996). The defendant here took the items he did under what he believed to be a claim of right. That is not larceny.
FIFTH COUNT: (CUTPA)
Jann was not engaged in a trade or commerce. This was simply an arrangement between private parties. It does not fall under the Connecticut Unfair Trade Practice Act and Connecticut General Statutes § 41-110, et seq. is not applicable. CT Page 10777
As to the counterclaim filed by the defendant claiming the plaintiff breached his contract to compensate the defendant and also claiming unjust enrichment, for the foregoing reasons there is no enforceable contract under the facts found.
The defendant was provided with shelter and paid no rent or utilities from January 1, 1994 thru September 30, 1994. The amount of work he did — which mainly consisted of removing part of the roof — did not unjustly enrich the plaintiff under the facts of this case. Unjust enrichment is essentially equitable.McNeil v. Riccie, 45 Conn. App. 466, 475 (1997). The defendant has not proved that in this case. The plaintiff has not unfairly benefitted [benefited] from the defendant's efforts. This is a case where neither party benefitted [benefited] and, because of their failure to memorialize a purported contract, both were disadvantaged.
CONCLUSION
Judgment shall enter for the plaintiff in the Second Count, in the amount of $1200 plus costs. Further, the defendant shall return those items of personal property he removed as follows: a braided rug, two lamps, a bed frame, and an end table.
Judgment shall enter for the defendant in Counts 1, 3, 4, and 5.
Judgment shall enter for the plaintiff on the Counterclaim.
Klaczak, J.