[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (AS REVISED)
This is a suit by the plaintiff, a former officer of the defendant corporation, who was so employed from June 1987 until March 1999.
The plaintiff's suit is in four counts. The first three counts seek reimbursement of money lost by him due to the failure of the defendants to pay severance wages pursuant to a contract agreement.
The fourth count seeks damages for the alleged conversion of a gun given to the plaintiff upon his departure from the company and later sold by the defendant.
The court will discuss these two claims separately.
 I. Counts 1-3 alleging failure to pay wages and breach of contract. A. Factual Background
In 1998, when the plaintiff was promoted to vice-president, a formal employment agreement was executed between the parties. This agreement provided for severance pay up to one year thereafter as well as other benefits if the defendant failed to renew the plaintiff's employment agreement.
In 1999, when the plaintiff's employment was, in fact, terminated the plaintiff and the defendant entered into a formal termination agreement, pursuant to which, the plaintiff was to be paid benefits including approximately one year's salary.
After the plaintiff's termination on March 19, 1999, the defendant began paying the severance payments on a bi-weekly basis beginning on April 15, 1999 and continued them until October 31, 1999.
The plaintiff was never told or informed in any way why his payments were terminated until he obtained counsel. At that time, he was informed CT Page 3871 that he was under investigation involving thefts that occurred during his employment. Without further explanation the payments were resumed on March 5, 2000 until all payments were completed, with the exception of the last week's payment which was made on October 20, 2000, some 76 days after the plaintiff advised the defendant of the shortage. Apparently, both parties had mistakenly overlooked this additional payment.
In addition to a contractual violation alleged in Count 1, the plaintiff alleges a violation of Connecticut's "failure to pay wages" statute General Statutes §§ 31-71a et seq., which statutes provide for double damages, (Count 2) and treble damages (Count 3), as well as punitive damages under both Counts 2 and 3. Interest is claimed pursuant to Counts 1-3.
 B. Discussion of Issues and Conclusions of Fact and Law Count 1 (Breach of Contract)
The parties are not in serious disagreement that the plaintiff was not paid the moneys due him when he was entitled to them. Pursuant to Count I (breach of contract), there only remains the issue as to whether or not the plaintiff is entitled to statutory interest pursuant to § 37-3a
for the wrongful detention of money.
Inasmuch as the defendant has not provided the court with any credible justification for its withholding of the moneys due the plaintiff pursuant to his contract, an award of interest is due the plaintiff in the amount of $2,090.43
 Counts 2 and 3 (Wage Law Violations)
The defendant takes great issue with the plaintiff's claim that the moneys owed the plaintiff violated § 31-7a (wage law) under Counts 2 and 3. For the following reasons the court agrees with the defendant that these statutes were not violated.
In order to prevail in this claim, the plaintiff must show that the payments due him from the defendant qualify as wages pursuant to §31-71a (3) which defines wages as "compensation for labor or services rendered by an employee whether the amount is determined on a time, task, piece, commission or other basis of calculation."
Case law in Connecticut is clear that severance payments are not included as statutory wages under § 31-72. McGowan v. Administrator,153 Conn. 691 (1966), ABC Office Equipment v. Royal Consumer BusinessProducts, 721 F. Sup. 1557 (D. Conn. 1989). See also, Wuerth v. SchottCT Page 3872Electronics, CV-91-036406, Flynn, J. Judicial District Ansonia/Milford at Milford.
The court therefore finds in favor of the defendant on Counts 2 and 3.
 II. Count 4 — Conversion A. Factual Background
On March 16, 1999, the defendant sponsored a farewell dinner for the plaintiff. In attendance were several officers of the company.
Two officers, Messrs. Hendrickson and Cartabona, presented the plaintiff with a single action 45 caliber Colt revolver together with a presentation case. This was a customary practice of long standing at Colt's. Because the gun was not yet engraved nor had ivory grips installed, the defendant, by agreement with the plaintiff, took possession of the gun to complete these improvements.
The following day, March 17, 1999, Colt's president, Steven Sliwa, in the plaintiff's office, apologized for his absence at the dinner and asked the plaintiff if he liked the gun. The plaintiff replied that he did, indeed, like the gun.
After making inquiry of the defendant over a period of several months as to when he was to receive the completed gun, the plaintiff was finally informed that the gun had been sold and there would be no replacement.
 B. Issues
The issues before this court are: (1) Was this a valid gift to the plaintiff?
(2) If the gift was valid, was it limited to the gun's condition at the time of presentation or was it a gift of the improved gun as promised to the plaintiff?
The defendant claims that there was no valid gift because:
(a) The corporation did not authorize the gift;
(b) There was no apparent authority given by the corporation to enable any officer to make the gift;
(c) If the corporation authorized the gift it was a gift of only the "bare bones' gun; CT Page 3873
(d) There was no conversion by the defendant of the gun;
(e) If the above issues are found for the plaintiff, he is entitled only to compensatory damages and not interest, or treble (theft) damages.
These issues will be discussed separately below.
C. Discussion and Conclusion
1. Validity of the Gift
The evidence adduced at trial overwhelmingly demonstrates that, in fact, the defendant made a gift of the revolver to the plaintiff. No witness contradicted the plaintiff who the court finds credible. The presentation of the gun was a gift wherein title was intended to pass immediately to the plaintiff. Berger v. Berger, 177 Conn. 53, 56-57
(1979)
2. Was the gift an improved or unimproved gun?
It is the defendant's claim that the gift (if any) was solely the unimproved gun. The facts, however, belie the claim.
Because the use or enjoyment of all or part of the gift is postponed until a future time, either by necessity or by choice of the donor does not prevent title passage if the donor's intent is to make the gift at that time. Kukanskis v. Jasut, 169 Conn. 29, 34 (1975). The form or mode of delivery is not determinative as to the validity of the gift. Delivery must only "be as nearly perfect and complete as the nature of the property and the circumstances will permit. Hebrew University Associationv. Nye, 26 Conn. Sup. 342, 344 (1966)
The court finds that the evidence clearly demonstrates that Colts intended to and did deliver a gun to the plaintiff which it also intended to be fully improved.
The parties have stipulated that the improved revolver was valued at $8,155 (as opposed to the unimproved version at $1,815.)
3. Did the Colt's officers have legal authority to make the gift?
The defendant contends that there must be a vote of the company's board of directors before the president or any officer can make a valid gift. There was no evidence in this case as to whether or not such a vote was CT Page 3874 ever taken, or what the by laws say on the subject. They were not introduced in evidence.
The law, however, does not and could not require that any or all actions by its officers must require board approval. If such were the case, no corporation could function in its normal every day business.
What our law requires is that the officer's acts other than those "shown to be so related to his duties . . . that they may reasonably be held to have been done in the prosecution of the business of the corporation and while he was acting within the scope of his employment", are authorized. Other acts would require some board approval. Czarneckiv. Plastics Liquidating Co., 179 Conn. 261, 266, 267 (1979), Lettieri v.American Savings Bank, 182 Conn. 1, 7 (1980). It would also appear that our Supreme Court has approved a New York decision which held that a corporate officer (president in that case) has "presumptive authority" to act where there was no contrary provision in the by laws and no prohibitory action by the board of directors, Zauber v. West View Hills,Inc., 148 Conn. 540, 542-543 (1961).
Our appellate court has followed this principle in Giuletti v.Giuletti, 65 Conn. App. 813, 872-873 (2001)
In analyzing the evidence presented at trial on this issue, it is clear to the court that it must make the following factual conclusion.
The gift presented to the plaintiff was initiated by Colt's and was presented to him at a dinner in his honor. Many witnesses of sufficient stature (whom the court finds were credible) testified that the presentation to the plaintiff was in accordance with a long standing custom of Colt's.
The actions of the president and other officers were clearly part of and related to their duties. The evidence presented was that retirement gifts were customarily made to such employees in the regular and normal business activities of the company.
The defendants introduced a document entitled Firearms Control Procedures (Ex.A). The company's general counsel, Carlton Chen, testified that these regulations were promulgated by the company president at that time (1998), Ronald Stewart. It is the defendant's claim that the delivery of the gun to the plaintiff was invalid because it violated such regulations.
This court disagrees with that contention for the following reasons: CT Page 3875
(1) if the regulations did indeed require signatures of four persons to be valid, the president of the company at the time of this gift, Mr. Sliwa, could have overruled them and was not bound by them.
(2) An examination of the procedures demonstrates that the resolution only applied to firearms being distributed "as samples". This gun was not in that category.
(3) The exhibit does not indicate that it was ever approved (page 1).
(4) The more credible testimony of Anton Gillyion, the Colt's Firearm Control Specialist, was that Colt's wouldn't always follow this procedure for a departing officer or even that the procedure was followed every time a gun left the Colt's facility. Moreover, all paperwork was completed at the time that the gun left the plant. In this case, the gun never left the plant with the plaintiff. Finally the defendant produced no evidence that the procedures requirements were not followed in this case.
For the above reasons, this court concludes that the gift to the plaintiff was made with proper legal authority by its president and participating officers.
4. Was the gift also made with valid apparent authority by the officers?
The plaintiff claims in addition to his claim of actual authority, that the gift was valid under the doctrine of apparent authority.
The law concerning apparent authority simply states that "it is the semblance of authority which a principal, through his own acts and inadvertences, causes or allows third persons to believe his agent possesses." Lewis v. Michigan Milkes Mutual Ins, Co., 154 Conn. 660, 665
(1967). Apparent authority must be determined by the acts of the principal rather than the acts of the agent. Norvak v. Capitol Motors,Inc., 150 Conn. 65, 69 (1969). The acts of the principal must be such that the principal held the agent out as possessing sufficient authority to act as having such authority and, in consequence thereof, the person dealing with the agent, acting in good faith, reasonably believed under all the circumstances, that the agent had the necessary authority,Nowak, supra, 69; Cohen v. Holloway's Inc., 158 conn. 395, 406-407 (1969).
This court finds that the long standing custom of Colt's to bestow such gifts upon its employees conferred such authority and the plaintiff acted in good faith in accepting the gift. The presentation to him by the CT Page 3876 officers and the confirmation of the gift by the president was sufficient to find that the gift was also valid pursuant to the doctrine of apparent authority.
5. Was there a conversion of the gift by the defendant?
Title to the gun passed when the plaintiff received it. Because the gun was returned to the defendant by the plaintiff for completion of the promised improvements did not affect passage of title nor does it imply that Colt's did not intend to pass title at that time.
There was not evidence presented to the court that Colt's did not intend to pass title to the plaintiff at the presentation dinner, or that the return of the gun was made for any reason other than to enable Colt's to make the promised improvements. Title therefore passed to the plaintiff because the court finds that it was the intent of the donor to pass title to the donee at the initial presentation. Bergen v. Bergen,177 Conn. 53, 56-57 (1979)
Because the gun subsequently came back into the possession of the donor in this case does not revoke the gift. Whiting v. Ralph, 75 Conn. 1
(1902).
At that time, Colts became the bailee of the gun with a duty to redeliver it to the bailor. On Site Energy Corp. v. Sperry Rand Corp.,5 Conn. App. 326 (1985).
The alleged conversion in this case arises out of an initial rightful possession and not the type of conversion wherein possession was wrongful from the outset. See Coleman v. Francis, 102 Conn. 612 (1925); see alsoSuarez-Negrete v. Trotta, 47 Conn. App. 517, 521 (1998).
To establish possession, the plaintiff must show (1) that the property at issue belongs to him, (2) that the defendant deprived the plaintiff of his property for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed the plaintiff. Zanoni v. Hudson, 48 Conn. App. 32, 38-39 (1998).
The defendant presented no evidence to this court that there was any intention not to pass title, that the return of the gun for improvements was not part of the gift, nor that it did not intentionally dispose of the gun by selling it. The plaintiff testified, and the court so finds, that the plaintiff was told by a Colt's officer, Mr. Cartabona, that the gun was sold.
None of the legal defenses to conversion by the bailee such as theft or CT Page 3877 loss, were claimed at trial. National Broadcasting Co. v. Rose,153 Conn. 210 (1965). Delivery to another by the bailor is a conversion.Luciani v. Stop Shop Co. Inc., 15 Conn. App. 407 (1988).
The court therefore finds that the defendant wilfully converted the gun to its own use.
 Damages Count 1 — Breach of Contract (Severance claim)
The plaintiff is due the sum of $2,090.43 pursuant to the court's finding in discussion of this count.
 Count 4 — Conversion
A. Compensatory — including interest
In general, the measure of damages for conversion is the value of the goods at the time they were converted, with interest from the date of the wrongful act. Griffin v. Nationwide Moving Store Co., 187 Conn. 405,419-20 (1982)
As previously noted, the parties have stipulated to the value of the gun and case unimproved to be $1,815. The value of the improvements portion of the gift is agreed to be $6,340. The value of the improved gift was therefore $8,155.
Interest is due to the plaintiff additionally from August 1, 1999 until the date of this judgment, January 16, 2002 at the statutory rate of 10% pursuant to General Statutes § 37-3a. The per diem rate is $2.23425 X 899 days or a total of $2,008.59.
B. Treble Damages pursuant to General Statutes § 52-564
The plaintiff is seeking treble damages pursuant to the conversion of the gun by the plaintiff. General Statutes § 52-564 provides for treble damages from "any person who steals any property of another . . ." Statutory theft is synonymous with larceny pursuant to General Statutes § 53a-119 which states "a person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains, or withholds such property from an owner .
In a civil action, "clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to section 52-564." CT Page 3878Suarez-Negrete v. Trotta, supra, p. 521.
In order to prevail, therefore, the plaintiff must show by such standard that the defendant corporation had the requisite intent to take the plaintiff's property.
The defendant claims that it had no such intent because it acted under an "honestly held claim of right." Lawson v. Whitey's Frame Shop,42 Conn. App. 599, 607 (1996).
In review of the evidence on this issue, this court has found no testimony or other evidence presented to it by the defendant to indicate that at any time prior to the institution of suit, that there was any claim by the defendant that it had a claim of right to the gun.
The only assertion by the defendant of a claim of right was made in this litigation wherein the defendant claimed the gift was invalid. It is difficult to accept an argument such as that made by the defendant when the overwhelming evidence was that guns were customarily given to retiring employees. No reason for denying the plaintiff's gift was even offered by the defendant.
The court finds that the defendant did, indeed, take the plaintiff's gun with the requisite intent to deprive the plaintiff of it and therefore awards treble damages on the compensatory damages in the amount of $24,465.00.
Treble damages are also awarded on the previously awarded interest in the amount of $6,025.76. Suarez-Negrette v. Trotta, supra, p. 522.
 Summary of Damages
Count 1 — (Severance claim) $ 2,090.43
Count 2 — Conversion
 a) compensatory damages 24,465.00 as trebled
b) interest as trebled 6,025.76
Total damages $32,581.19
Judgment may enter accordingly.
___________, J. CT Page 3879 Freed