FRANK LAWSON *v*. WHITEY'S FRAME SHOP

DOROTHY CHAREST *v*. WHITEY'S FRAME SHOP
(SC 15545)

Callahan, C. J., and Borden, Berdon, Katz and Peters, Js.

Argued April 23—officially released July 15, 1997

*Michael D. O'Connell,* with whom, on the brief, was *Julia B. Morris,* for the appellant (defendant).

*Kirstin B. Coffin,* for the appellees (plaintiffs).

KATZ, J. The principal issue in this certified appeal is whether, under the circumstances of these consolidated cases, the Appellate Court properly concluded that the defendant, Whitey's Frame Shop, violated the Connecticut Unfair Trade Practices Act (CUTPA)[1] by disposing of automobiles owned by the plaintiffs, Frank Lawson and Dorothy Charest, in accordance with the defendant's contract with the city of Hartford (city). We conclude that the city acted within its authority in enacting an ordinance providing for the towing of scofflaw vehicles and that the defendant was authorized by its contract with the city, entered into under that ordinance, to tow and dispose of the plaintiffs' vehicles. Therefore, we conclude that the trial court improperly determined that the defendant had violated CUTPA and we reverse the judgment of the Appellate Court insofar as it affirmed the trial court's finding of a CUTPA violation.

The opinion of the Appellate Court sets forth the following facts relevant to these appeals. "The plaintiffs each incurred over $3000 in fines arising from unpaid parking tickets issued by the city of Hartford. The plaintiffs did not contest the tickets when they were issued. On April 5, 1990, the defendant, acting at the direction of the Hartford police department, towed the plaintiffs' automobiles to its lot. At a hearing pursuant to a city ordinance before the Hartford tax department on April 6, 1990, a hearing officer reduced the amount of the fines the plaintiffs owed by eliminating the additional interest and penalties due. Each plaintiff still owed over $1000, the total of the face amounts of the tickets.[2] Some time later, the plaintiffs contacted the defendant

---

[1] General Statutes §§ 42-110a through 42-110q.

[2] "On April 23, 1991, the city issued parking ticket releases to each plaintiff because the fines were deemed to be uncollectable." *Lawson* v. *Whitey's Frame Shop*, 42 Conn. App. 599, 601 n.2, 682 A.2d 1016 (1996).

and informed it that they were still contesting the validity of the tickets.

"Pursuant to both a city ordinance[3] and the contract between the defendant and the [city], the defendant was prohibited from releasing automobiles to their owners until all outstanding parking fines were satisfied. The contract specified that when the automobile owner came to retrieve his or her automobile with proper proof of payment of the fines, the defendant was to collect its towing, storage and administrative fees from the automobile owner. The contract also stated that any automobiles not claimed by their legal owners should be stored and disposed of pursuant to General Statutes § 14-150.[4]

---

[3] Section 22-44 (b) of the Hartford city ordinances provides: "The chief of police shall not authorize or direct the release of any vehicle placed within a vehicle pound pursuant to [the scofflaw ordinance] until such time as the owner or person in charge of such vehicle shall have:

"(1) Supplied the chief of police with evidence of his identity and ownership;

"(2) Satisfied all outstanding municipal parking citations against the subject vehicle to the satisfaction of the chief of police;

"(3) Paid the cost of removal, impoundment, and administration; and

"(4) Signed a receipt for such vehicle."

[4] General Statutes § 14-150 provides in pertinent part: "Abandoned or unregistered motor vehicles and motor vehicles which are a menace to traffic. Notice. Removal. Storage. Hearing. Lien. Sale. (a) Any person who abandons any motor vehicle within the limits of any highway or upon property other than his own without the consent of the owner thereof for a period longer than twenty-four hours shall have committed an infraction and shall be fined not less than eighty-five dollars. The last owner of record of a motor vehicle found abandoned, as shown by the files of the Department of Motor Vehicles, shall be deemed prima facie to have been the owner of such motor vehicle at the time it was abandoned and the person who abandoned the same or caused or procured its abandonment.

"(b) Any inspector of the Department of Motor Vehicles, any officer attached to an organized police department or any state police officer upon discovery of any motor vehicle, whether situated within or without any highway of this state, which is a menace to traffic or public health or safety, shall take such motor vehicle into his custody and cause the same to be taken to and stored in a suitable place. . . .

"(g) The owner or keeper of any garage or other place where such motor vehicle is stored shall have a lien upon the same for his storage charges.

"The plaintiffs did not pay the parking fines and thus could not retrieve their automobiles from the defendant. On April 24, 1990, allegedly acting pursuant to § 14-150 (g), the defendant sent notice to the department of motor vehicles of its intent to sell both automobiles. On May 4, 1990, the defendant, also allegedly acting pursuant to § 14-150 (g), sent notice to the plaintiffs that their automobiles would be sold. On July 16, 1990, the defendant sold the automobiles for their salvage value of $50 each.

"The trial court determined that because the plaintiffs demanded the return of their automobiles while they contested the tickets in a variety of fora, the automobiles were not 'abandoned' as that term is used in § 14-150. Because the automobiles were not abandoned, the court reasoned, the defendant did not have the authority to dispose of them. Therefore, the trial court awarded to each plaintiff the $50 salvage value the defendant received for each automobile.[5] This amount was then trebled pursuant to General Statutes § 52-564.[6] The trial

---

Unless title has already vested in the municipality pursuant to subsection (d), if the current market value of such motor vehicle as determined in good faith by such owner or keeper does not exceed five hundred dollars and such motor vehicle has been stored for a period of not less than fifteen days, such owner or keeper may, unless an application filed by the owner pursuant to subsection (d) of this section is pending and the owner of such motor vehicle has notified such owner or keeper that such application for hearing has been filed, sell the same for storage and towing charges owed thereon, provided a notice of intent to sell shall be sent to the commissioner and the owner of such motor vehicle, if known, five days before the sale of such vehicle. . . ."

[5] "The trial court awarded the $50 under the plaintiffs' first count of conversion. The trial court refused to award compensatory damages for lost wages or for the alleged full value of the automobiles because, the court asserted, the plaintiffs failed to produce any evidence to substantiate those claims for damages." *Lawson* v. *Whitey's Frame Shop*, 42 Conn. App. 599, 603 n.5, 682 A.2d 1016 (1996).

[6] General Statutes § 52-564 provides: "Treble damages for theft. Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

court also awarded to each plaintiff CUTPA damages of $1018 because it concluded that the defendant's improper disposal of the automobiles could cause substantial injury to consumers. These awards were offset by the trial court's determination that each plaintiff owed the defendant $1168 in towing and storage fees." *Lawson* v. *Whitey's Frame Shop*, 42 Conn. App. 599, 601–603, 682 A.2d 1016 (1996).

The plaintiffs appealed from the judgments of the trial court to the Appellate Court, arguing that the trial court had improperly awarded fees and costs to the defendant. The defendant filed cross appeals, challenging the trial court's determination that it had violated CUTPA. The Appellate Court affirmed the trial court's judgment with respect to the towing and storage charges, and also affirmed the trial court's determination on the CUTPA claim, concluding that the defendant's actions were not exempt from CUTPA despite the defendant's argument that it had acted on the authority and direction of the city in disposing of the plaintiffs' automobiles.[7] We granted the defendant's petition for certification to appeal, limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the trial court properly concluded that the defendant violated the Connecticut Unfair Trade Practices Act by disposing of the plaintiffs' automobiles?" *Lawson* v. *Whitey's Frame Shop*, 239 Conn. 929, 683 A.2d 397 (1996). Thereafter, pursuant to Practice Book § 4140 (b),[8] the plaintiffs argued that

---

[7] The Appellate Court also concluded, however, that the trial court's award of treble damages under § 52-564 on the plaintiffs' award of the $50 salvage value of each of their automobiles constituted plain error. *Lawson* v. *Whitey's Frame Shop*, supra, 42 Conn. App. 607. Those portions of the judgments were reversed. Id., 616–17. The plaintiffs do not challenge the finding of plain error on appeal. See footnote 8 of this opinion. Additionally, the defendant did not appeal from the plaintiff's verdict on the conversion count.

[8] Practice Book § 4140 (b) provides in relevant part: "Any party may . . . present for review any claim that the relief afforded by the appellate court

the judgment of the Appellate Court should be modified because the Appellate Court had improperly concluded that: (1) the trial court did not abuse its discretion in awarding only the $50 salvage value for the plaintiffs' automobiles; and (2) the trial court did not abuse its discretion in its ruling on attorney's fees and punitive damages. We reverse in part the judgment of the Appellate Court with respect to its resolution of the CUTPA issue.

I

The defendant argues that it did not violate CUTPA because: (1) the city had the authority to tow scofflaw vehicles pursuant to the city ordinance; and (2) the defendant relied, in good faith, upon its contract with the city, which authorized the defendant to store and dispose of such vehicles in accordance with the procedures set forth in § 14-150 (g). In response, the plaintiffs argue that the defendant could not have relied on the disposal procedures in § 14-150 because that statute does not contemplate scofflaw vehicles within its provisions. We agree with the defendant.

We begin by recognizing that the city, in accordance with its police powers and the Home Rule Act; General Statutes §§ 7-187 through 7-201;[9] had the authority to take the necessary actions to carry out its municipal duties. See *New Haven Commission on Equal Opportunities ex rel. Washington v. Yale University*, 183 Conn.

in its judgment should be modified, provided such claim was raised in the appellate court either in such party's brief or upon a motion to reargue."

[9] General Statutes § 7-194 provides in pertinent part: "[A]ll towns, cities, or boroughs which have a charter or which adopt or amend a charter under the provisions of this chapter shall have the following specific powers in addition to all powers granted to towns, cities and boroughs under the constitution and general statutes: To manage, regulate and control the finances and property, real and personal, of the town, city or borough and to regulate and provide for the sale, conveyance, transfer and release of town, city or borough property and to provide for the execution of contracts and evidences of indebtedness issued by the town, city or borough."

495, 499, 439 A.2d 404 (1981) ("a municipality [has] such powers as are necessary to enable it to discharge its duties and carry into effect the objects and purposes of its creation"). Here, the city ordinances provided that the police department had the right to tow any vehicle that had five or more unpaid municipal parking citations.[10] Those ordinances, however, did not set forth any procedures for the disposal of such vehicles when their owners failed to pay the amounts owed to the city and the towing company.

The defendant argues that, for such scofflaw vehicles, the city, recognizing such omission in the ordinances, adopted the storage and disposal procedures set forth in § 14-150 (g). The defendant further argues that a plain reading of the contract between the city and the defendant confirmed the intent to adopt those storage and disposal procedures. We agree.

The contract outlines the reasons that the city might have for directing the defendant to tow and store a vehicle, including clearing vehicles during snowstorms, removing vehicles following accidents or to be held for evidence, removing scofflaw vehicles and such other actions as the police department may designate. Furthermore, the contract provides that "[f]or vehicles not claimed by their legal owners, the [defendant] shall store and dispose of said vehicles as provided by section 14-150 of the Connecticut Statutes."

---

[10] Specifically, § 22-42 (b) of the Hartford city ordinances provides: "Whenever any vehicle is found parked upon the streets and public grounds of the city and where there are five (5) or more municipal parking citations issued for violation of any municipal traffic ordinance, rule or regulation upon such vehicle, which are delinquent, unpaid, otherwise unsettled and uncontested, then a member of the police department may place or direct a person or persons so authorized by the chief of police to place an immobilization device upon such vehicle or, in the alternative, the member of the police department may remove and convey such vehicle by means of towing or otherwise, to a vehicle pound or he may order such person so authorized by the chief of police to remove and convey such vehicle by means of towing, or otherwise, to a vehicle pound."

The trial court concluded that because the plaintiffs had continually demanded the return of their vehicles, the vehicles were not "abandoned" under § 14-150 (a) and, accordingly, the defendant could not rely on the statute. The Appellate Court agreed with the trial court, concluding that the failure of the contract to reference subsection (g) of the statute; see footnote 4 of this opinion; which governs the procedure for storage and disposal of unclaimed vehicles, required application of § 14-150 in its entirety. The Appellate Court then concluded that, "because § 14-150 does not contemplate the disposal of scofflaw vehicles, the contract between the city and the defendant by necessity could not have provided for the disposal of such vehicles." *Lawson* v. *Whitey's Frame Shop*, supra, 42 Conn. App. 616.

Our resolution of the defendant's claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is "determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact

that is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, 239 Conn. 284, 295, 685 A.2d 305 (1996).

In our view, the Appellate Court improperly concluded that the failure expressly to reference subsection (g) of § 14-150 in the contract required application of the entire statute. The contract's language is clear and unambiguous that vehicles that are unclaimed by their legal owners shall be stored and disposed of in accordance with § 14-150. Furthermore, it is undisputed that such storage and disposal procedures are set forth in subsection (g) of that statute. It would be a hypertechnical construction of the contract, indeed, to require application of the entire statute merely because the contract provision does not refer specifically to that particular subsection.

Even if we were to assume, without deciding, that the contract's failure to refer to subsection (g) meant that the entire statute applies, the Appellate Court's conclusion that the defendant could not dispose of vehicles that were not specifically designated by § 14-150 is contrary to common sense and to a plain reading of the contract as a whole.[11] Because the contract expressly provides for the seizure of scofflaw vehicles, it is only logical, in the absence of any provision to the contrary, that the city intended to authorize the defendant to dispose of such vehicles. Moreover, there is no reason to interpret the contract to provide that

[11] We note that, at oral argument before this court, a question arose as to whether, applying § 14-150 in its entirety, that statute does in fact contemplate the disposal of scofflaw vehicles in light of subsection (a) of the statute, which deems a vehicle abandoned if it has been left on the property of another for a period longer than twenty-four hours. Because we conclude that the defendant had the authority to dispose of the plaintiffs' automobiles in accordance with the terms of the contract with the city, and without relying on the application of § 14-150 (a), we need not decide this issue today.

the defendant could dispose only of those vehicles that are specifically designated in the statute. See, e.g., General Statutes § 14-150 (b) ("menace to traffic"); General Statutes § 14-150 (c) ("motor vehicle without proper registration"); General Statutes § 14-150 (d) ("no registration marker plates or invalid registration marker plates"). Here, the city acted well within its authority in enacting an ordinance that provided that the police department could direct authorized persons to tow scofflaw vehicles. It would indeed be a foolish reading of the contract to confer upon the defendant the authority to tow scofflaw vehicles, but to deny the defendant, if the vehicles were not claimed by their legal owners, any opportunity to recoup its expenses by disposing of the vehicles after proper notice. Accordingly, we conclude that the Appellate Court improperly held that the defendant, under its contract with the city, was not authorized to tow, store and dispose of scofflaw vehicles and, therefore, improperly affirmed the trial court's judgment finding that the defendant had violated CUTPA by disposing of the plaintiffs' vehicles. We recognize that the defendant's authority to dispose of the plaintiffs' automobiles under its contract with the city does not necessarily mean that the defendant would be immune from CUTPA liability under all other circumstances. We need not decide, however, whether the presence of bad faith in the performance of a valid contract *could* form the basis of a CUTPA claim because the plaintiffs make no such claim in this case.

II

We next consider the plaintiffs' argument that, with respect to their claim for conversion, the judgment of the Appellate Court should be modified because the Appellate Court improperly concluded that the trial court did not abuse its discretion in awarding only the

$50 salvage value for the plaintiffs' automobiles.[12] In response, the defendant argues that the Appellate Court properly concluded that the plaintiffs had failed to prove greater compensatory damages than those awarded by the trial court. We agree with the defendant.

In its memorandum of decision, the trial court stated: "[A]s to the first count of their amended complaints, the plaintiffs have failed to produce actual damages apart from perhaps a claim for the salvage price of $50 the defendant received for each of the cars. Neither plaintiff presented any evidence as to the actual value of the vehicles; repair bills on the Lawson car [cannot] establish a value for this 1979 car. Also, Ms. Charest did not prove any damages as regards to lost income because of the defendant's disposal of this vehicle. She sold items from the car or by using the car but lost money from this business venture over a period of years. She did not give any estimate as to how much money she lost as a result of missed business opportunities. Similarly as to Mr. Lawson, he vaguely testified as to lost employment opportunities but did not present any evidence as to actual monetary loss."

"It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Although damages often are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier . . . this situation does not invalidate a damage award as long as the evidence

---

[12] Because the defendant did not appeal from the plaintiffs' verdict on the conversion counts; see footnote 7 of this opinion; that verdict is still intact even though we conclude that the defendant had the authority to dispose of the plaintiffs' automobiles.

afforded a basis for a reasonable estimate by the [trier] of that amount. . . . Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. . . ." (Citations omitted; internal quotation marks omitted.) *24 Leggett Street Ltd. Partnership* v. *Beacon Industries, Inc.*, supra, 239 Conn. 308–309. "The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 28, 664 A.2d 719 (1995).

Having reviewed the record, we agree with the Appellate Court that the plaintiffs failed to establish damages beyond the $50 awarded for the salvage value of their automobiles. As the Appellate Court stated: "First, Charest testified that not only did she initially have another vehicle to use in her weekend job as a produce vendor, but that in previous years she had never shown a profit in this endeavor. Second, Charest testified that Lawson was not able to work from 1990 to 1992 as a result of losing the use of his automobile. The plaintiffs, however, offered no other evidence to substantiate the claim for Lawson's lost wages. Finally, the plaintiffs did not offer any evidence regarding the book value of either automobile. In light of the paucity of evidence relating to actual damages, therefore, the trial court clearly did not abuse its discretion in awarding compensatory damages of $50 for each car." *Lawson* v. *Whitey's Frame Shop*, supra, 42 Conn. App. 605.[13]

---

[13] The plaintiffs also argue that the Appellate Court improperly concluded that the trial court did not abuse its discretion by not awarding them attorney's fees and punitive damages. Although the plaintiffs' argument is unclear whether they claim that such fees and damages should have been awarded as part of the conversion or the CUTPA claim, we nevertheless decline to address either claim.

The Appellate Court noted that the trial court had found that the defendant's practice of disposing of unclaimed scofflaw vehicles could cause substantial injury to consumers and, therefore, treated the $1018 in CUTPA

The judgment of the Appellate Court is affirmed with respect to the conversion counts of the plaintiffs' complaints and with respect to the defendant's counterclaim; the judgment is reversed with respect to the CUTPA counts of the plaintiffs' complaints and the cases are remanded to the the Appellate Court with direction to remand the cases to the trial court with direction to render judgments in favor of the defendant on the CUTPA counts.

In this opinion the other justices concurred.

damages as punitive damages. *Lawson* v. *Whitey's Frame Shop*, supra, 42 Conn. App. 609. The plaintiffs argue in their brief that "[t]he Appellate Court chose to consider the $50 salvage value of the plaintiffs' vehicles as the only actual damages the trial court awarded the plaintiffs, and therefore assumed that the award of punitive damages was 'over twenty times' the actual damage award. The plaintiffs believe that given their expansive testimony on lost employment opportunities from the loss of their vehicles that the $1018 CUTPA award *may have* also involved actual damages, and that therefore they were entitled to a larger punitive damage award." (Emphasis added.)

Because the plaintiffs failed to seek an articulation from the trial court to clarify whether the $1018 in CUTPA damages was for compensatory damages, punitive damages or attorney's fees relating to the $50 compensatory award, we decline to review this claim. See *Bank of Boston Connecticut* v. *Schlesinger*, 220 Conn. 152, 154 n.2, 595 A.2d 872 (1991) ("[i]t is the responsibility of the appellant to seek an articulation of the trial court's decision in order to provide this court with an adequate record for review"); see also Practice Book § 4051. Moreover, because we conclude that the defendant did not violate CUTPA, we need not address whether the trial court abused its discretion by not awarding attorney's fees and punitive damages to the plaintiffs as part of the CUTPA award.