[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE COUNTERCLAIM, MOTIONTO STRIKE FROM JURY LIST, MOTION TO STRIKE FROM TRIAL LIST MOTIONTO STRIKE COUNTERCLAIM, COUNTS SECOND AND FOURTH
The plaintiff, Mafcote Industries, Inc., filed a complaint against the defendant, Randall Swanson, seeking damages for the alleged theft of a car, office equipment and confidential sales information.
On November 21, 1997, the defendant filed a second amended answer, affirmative defenses and counterclaims.[1] The four count counterclaim sounds in breach of contract (count one), intentional infliction of emotional distress (count two), negligent infliction, of emotional distress (count three), and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (count four).[2]
The plaintiff filed a motion to strike the second and fourth counts of the amended counterclaim. The plaintiff moves to strike the second count on the ground that the defendant's allegations "do not amount to conduct which is of a nature which is especially calculated to cause mental distress of a very serious kind. Such conduct does not constitute extreme and outrageous conduct as a matter of law." The plaintiff moves to strike the fourth count on the ground that "[CUTPA] does not apply to the employer-employee relationship. "
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 496, 495 A.2d 286 (1985). The role of the trial court is "to examine the [pleading] construed in favor of the [non-movant], to determine whether the [non-movant] has stated a legally sufficient cause of action." Napoletano v. Cigna
CT Page 820Healthcare of Connecticut, Inc., 238 Conn. 216, 232-33,680 A.2d 127 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1106,137 L.Ed.2d 308 (1997).
The second count of the defendant's counterclaim sounds in intentional infliction of emotional distress. The plaintiff argues, in support of its motion to strike, that the defendant fails to allege conduct which rises to the level of "extreme and outrageous."
In order to establish a counterclaim for intentional infliction of emotional distress, the defendant must allege, in the counterclaim, the following elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the [plaintiffs] conduct was the cause of the [defendant's] distress; and (4) that the emotional distress sustained by the [defendant] was severe. . . ." Drew v. K-Mart Corp.,37 Conn. App. 239, 251, 655 A.2d 806 (1995).
The plaintiff does not dispute that all of the requisite elements have been pleaded. The only issue that the plaintiff raises regarding the defendant's allegations is whether the conduct alleged rises to the level of "extreme and outrageous" as a matter of law.
"The issue of whether a defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be determined by the court. . . . For conduct to be considered extreme and outrageous, it must exceed all bounds usually tolerated by a decent society, and be of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Pantaleo v. Ravski, Superior Court, judicial district of New Haven at New Haven, Docket No. 326931 (Feb. 14, 1997, Silbert, J.).
In the present case, the defendant, in his counterclaim, alleges that the plaintiff's conduct, "taken together as an entire course shows that [the plaintiff] was seeking to harass and burden [the defendant]." The defendant also claims that the plaintiff's conduct, taken in its totality, was "outrageous and beyond the pale of civilized conduct." Specifically, the defendant alleges that: "a. [The plaintiff] put several different, inconsistent choices before [the defendant]; b. [The CT Page 821 plaintiff] changed its stated posture as negotiations continued; c. [The plaintiff] reneged on particular items previously agreed to by the parties during the course of the negotiation; d. The changes in [the plaintiff's] position frequently were regressive in nature; e. In response to [the defendant's] request that he be permitted to purchase his company car, [the plaintiff's] agents stated that they would consider his offer. [The plaintiff] did not consider [the defendant's] offer in good faith; f. After agreeing to consider [the defendant's] request to purchase [the] company car, and without prior notice, [the plaintiff's] agent went to [the defendant's] home during the [n]ew [y]ear [h]oliday for the purpose of repossessing the car. Finding that [the defendant] was not at home, [the plaintiff's] agent tried to persuade [the defendant's] adolescent son to give him possession of the car, notwithstanding that there was no parent, nor any adult, present at the time; g. [The plaintiff] unreasonably delayed in paying [the defendant] monies which had been previously earned by him and which were due and owing to him, notwithstanding that [the defendant] had been terminated in November, shortly before the holiday season and that [the plaintiff] knew [the defendant] was without a regular employment or stream of income to support his family during this period; h. [The defendant] had arranged for the purchase of [the] company car at the, outset of his employment. The car had been purchased from a dealer in Wisconsin and had been utilized by [the defendant] from his home and office in Wisconsin. [The plaintiff] initially refused, by its silence, to sell [the defendant] the car even though at other times it sold company vehicles on favorable terms to those who had used them. [The plaintiff's] stated reason for refusing to sell [the defendant] the car which he used was that that particular car was needed in New Jersey. This reason was pretext. i. Within approximately four months following [the defendant's] termination, [the plaintiff] had abandoned its purported need to utilize [the] company car [held by the defendant] in or around New Jersey or anywhere else. Notwithstanding this, [the plaintiff] did not offer the car to [the defendant]; did not inform [the defendant] that it no longer desired to have the car; did not offer the car for sale, nor did it authorize [the defendant] to do so. In this way[, the plaintiff] intended to burden, and did burden, [the defendant] with a car which it did not want[,] but which [the defendant] could not use. j. By coming to [the defendant's] home unannounced and unexpected during a holiday period and by constricting [the defendant's] cash flow as set forth . . . above, [the plaintiff] embarrassed [the defendant] before his family." CT Page 822
The conduct alleged by the defendant does not "exceed all bounds usually tolerated by a decent society." Nor is the conduct alleged "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." The facts alleged by the defendant amount to little more than a company's refusal to sell its legally owned vehicle to a former employee; an attempt to recover the vehicle; and an alleged withholding of wages. The facts, as pleaded, are legally insufficient to sustain a cause of action for intentional infliction of emotional distress. Therefore, the plaintiff's motion to strike the second count of the counterclaim is granted.
In the fourth count of the counterclaim, the defendant alleges that "[the plaintiff's] actions constitute unfair trade practices within the meaning of [General Statutes] §§ 42-110 et seq." Specifically, the defendant alleges that the plaintiff's actions listed above were "unfair and coercive." The defendant also claims that the plaintiff "was seeking to harass, intimidate and burden [the defendant] with respect to his conduct following his termination from [the plaintiff] and as to his interactions and relations with third parties unrelated to [the plaintiff]."
In Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670,613 A.2d 838 (1992), the court upheld the trial court's granting of a motion to strike a CUTPA claim arising from the employer-employee relationship because "[t]here [was] no allegation in the complaint that the [employer] advertised, sold, leased or distributed any services or property to the [employee]."Quimby v. Kimberly Clark Corp., supra, 28 Conn. App. 670. The court further stated that "[t]he United States District Court . . . [has] held that the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA. . . ." (Citations omitted; internal quotation marks omitted.) Id.
In the present case, the defendant does not allege that the plaintiff "advertised, sold, leased or distributed any services or property" to him. In fact, the only relationship alleged by the defendant is found in paragraph one of the counterclaim. Paragraph one states only that "[the defendant] was employed by [the plaintiff]." Therefore, the defendant has not alleged facts that are legally sufficient to maintain a cause of action under CUTPA. CT Page 823
The defendant argues in his memorandum in opposition to the motion to strike that "[i]t is clear from the pleadings that all of the actions complained of in the [c]ounterclaims arise after [the defendant] had been severed from employment." Therefore, the defendant argues, CUTPA applies to the present case.[3] The defendant cites two cases in support of his position: LarsenChelsey Realty Co. v. Larsen, 232 Conn. 480, 656 A.2d 1009 (1995) and Fink v. Golenbock, 238 Conn. 183, 680 A.2d 1243 (1996).
The Supreme Court stated in Larsen: "The plaintiff contends, in short, that [the defendant] accepted a job with a competing real estate broker and then, acting as a competitor, took actions that harmed the plaintiff. . . . These allegations lie outside the narrow confines of the employer-employee relationship and may constitute a violation of; CUTPA . . . ." Larsen Chelsey RealtyCo. v. Larsen, supra, 232 Conn. 494. The court also stated that "[u]nlike the situation in Quimby, [supra,] this case presents a fact pattern that involves a potentially viable cause of action under CUTPA because Larsen's allegedly tortious conduct was outside the scope of his employment relationship with the plaintiff." Larsen Chelsey Realty Co. v. Larsen, supra,232 Conn. 493-94.
Larsen does not apply to the present case. Here, the allegations made by the defendant lie within "the narrow confines of the employer-employee relationship. " Further, the Larsen court did not hold, as the defendant maintains, that the door is open to the bringing of any CUTPA claim, for any reason, after the employee's employment is terminated. Rather, the CUTPA action inLarsen arose out of a business practice. Here, the CUTPA action arises out of an employer-employee relationship.
Fink is also inapplicable to the present case. In Fink, the court stated that "the defendant took certain actions designed to usurp the business and clientele of one corporation in favor of another. As such, [the defendant's] acts fit squarely within the provenance of CUTPA." Fink v. Golenbock, supra, 238 Conn. 212.
Here, as already stated, the defendant's counterclaims arise solely from the employer-employee relationship. The contract, car and wages that are at the center of the defendant's counterclaim all stem directly from the defendant's employment with the plaintiff. Recalling that "the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA"; Quimby v. Kimberly Clark
CT Page 824Corp., supra, 28 Conn. App. 670; the court holds that the fourth count of the counterclaim is legally insufficient. The plaintiffs motion to strike the fourth count of the counterclaim is granted.
MOTION TO STRIKE FROM TRIAL LIST
MOTION TO STRIKE FROM JURY DOCKET
On May 30, 1996, the present case was claimed to the trial list and is assigned for trial before an attorney trial referee on January 21, 1998. On November 20, 1997 however, the defendant filed a certificate of closed pleadings and a claim to the jury list. The plaintiff has filed a motion to strike the jury claim based on two grounds: "(1) the jury claim is untimely and (2) the defendant has waived a trial by jury." The defendant has filed an opposition to the motion to strike.
General Statutes § 52-215 states: "When . . . an issue of fact is joined, the case may, within ten days after such issue of fact is joined" be claimed to the jury list. "Where the original ten day period for claiming a case to the jury has expired, a new ten day period may be created by the filing of an amended pleading, provided that the amended pleading introduces a new issue of fact into the case. . . . If a new issue of fact is introduced by the amended pleading, requiring the filing of a responsive pleading, then the new ten day period within which the parties may elect a jury trial begins to run from the time that the responsive pleading is filed and the parties are again at issue." (Citation omitted.) Javit v. Marshall's, Inc.,40 Conn. App. 261, 266, 670 A.2d 886, cert. denied, 236 Conn. 915,673 A.2d 1142 (1996).
In the present case, an amended answer, defenses and counterclaim were all filed on February 21, 1997. The counterclaim raised a plethora of new factual issues. On November 7, 1997, this court granted the plaintiff's motion to strike counts one and three of the amended counterclaim. On November 14, 1997, the plaintiff answered count two of the counterclaim. Since the ten day period begins to run from the time that the responsive pleading is filed; Javit v. Marshall's, Inc., supra,40 Conn. App. 266; the ten day period begins to run on November 14, 1997.
The defendant filed a jury claim on November 20, 1997. That date being within ten days of November 14, 1997, the jury claim CT Page 825 was timely made.
The plaintiff also argues, however, that the defendant waived his right to a trial by jury. The plaintiff points specifically to an employment agreement made between the plaintiff and the defendant which states: "In any action or proceeding relating to this Agreement, the parties mutually waive trial by jury."
The defendant argues that: (1) the jury waiver provision is limited to remedies for breach of paragraphs 8, 9 and 10 to which this action does not apply; and (2) the counterclaim "exceeds the scope of the employment agreement" and therefore the jury waiver does not apply.[4]
The counterclaim, as it currently stands, contains an action for breach of contract (count one) and negligent infliction of emotional distress (count three). Both counts begin with several paragraphs of allegations pertaining to the making of the subject employment agreement. Therefore, the counterclaim does not "exceed the scope of the employment agreement" as is claimed by the defendant. Rather, the counterclaim explicitly incorporates the employment agreement.
"Absent a statutory warranty or definitive contract language, the trial court's interpretation of a contract, being a determination of the parties' intent, is a question of fact . . . ." Lawson v. Whitey's Frame Shop, 241 Conn. 678, 686, ___ A.2d ___ (1997).
The subject agreement is ambiguous regarding whether the jury waiver applies to the entire agreement or only to paragraphs 8, 9 and 10. The plain language of the, sentence quoted above suggests that the parties waived all jury claims relating to the employment agreement. That sentence read in context, however, might indicate that the waiver was only intended to relate to paragraphs 8, 9 and 10 of the employment; agreement. This issue presents a question of fact for the court to resolve. The court does not currently have evidence, however, to make such a determination. Nevertheless, even if the court were now to resolve that issue, an evidentiary hearing would still be required for a different reason.
Recently, the appellate division held that "the execution of a document containing a contractual jury trial waiver provision does not automatically constitute an enforceable jury trial CT Page 826 waiver. Instead, the contractual jury trial waiver must be made knowingly, voluntarily and intelligently, and this factual determination must be made via an evidentiary hearing, where the party seeking to enforce the waiver bears the burden of proof." L R Realty v. Connecticut National Bank, 46 Conn. App. 432, 442, ___ A.2d ___, cert. granted, 243 Conn. 933, ___ A.2d ___ (1997).
"In determining the validity of the contractual jury trial waivers at this evidentiary hearing, the trial court should . . . [consider] such factors as (1) the conspicuousness of the waiver provisions, (2) whether the parties were represented by counsel, (3) whether there was a gross disparity in bargaining power between the parties, (4) the business or professional experience of the party opposing the waivers, and (5) whether the party opposing the waivers had an opportunity to negotiate contract terms." L R Realty v. Connecticut National Bank, supra,46 Conn. App. 442-43.
In the present case, the determination of whether the waiver provision was intended to apply to the entire agreement or only to paragraphs 8, 9, and 10 is a question of fact that the court will resolve at the time of an L R Realty — type evidentiary hearing.
Therefore, in light of the above discussion, the court's decision regarding the plaintiff's motion to strike the jury claim and the defendant's motion to strike from the trial list is reserved pending an evidentiary hearing.
The parties should arrange with the Stamford/Norwalk Caseflow Office for the date and time of said hearing to be heard by this judge.
So Ordered.
D'ANDREA, J.