**Joseph TOURANGEAU, et al.**

v.

**UNIROYAL, INC., et al.**

**No. Civ. N–86–208 AHN.**

United States District Court, D. Connecticut.

Sept. 28, 2000.

Seth Kupferberg, Sipser, Weinstock, New York City, for plaintiffs.

Daniel M. Abuhoff, Christopher G. Karagheuzoff, Debevoise & Plimpton, New York City, for Uniroyal, In., Joseph P. Flannery, William J. Palmer, Thomas W. Clark, Norma R. Sullivan, Alan R. Elton, Ronald H. Hawkins, Frank J. Longto, Uniroyal Plastics Co., Inc., Jespu Group, Inc., defendants.

Stewart I. Edelstein, Cohen & Wolf, P.C., Bridgeport, CT, for Michelin NA, Inc., defendant.

James R. Hawkins, II, Patrick J. McHugh, Finn dixon & Herling, Stamford, CT, for National Union Fire Ins. Co. of Pittsburgh, PA, defendant.

## RULING ON MOTION TO DISMISS CROSS CLAIM

NEVAS, District Judge.

Presently pending in this action is the motion of Uniroyal Corp. ("Uniroyal") to dismiss the cross claim of the third-party defendant, National Union Fire Insurance Co. of Pittsburgh, Pa. ("National Union"). In the cross claim, National Union alleges that a release given by Uniroyal in 1988 in exchange for payment under a 1985 pension trust liability policy obliges Uniroyal to indemnify National Union for liability it may incur under a fiduciary liability policy that National Union issued to Michelin Corp. in 1994. In its motion to dismiss, Uniroyal maintains that the release limits the scope of its undertaking to claims made under the 1985 policy and that Michelin's claim is under an entirely different policy and is not affected by that release. For the following reasons, the motion [doc. # 459] is GRANTED.

## BACKGROUND

National Union issued to Uniroyal, Inc. ("Uniroyal") a Pension Trust Liability Policy, No. 124 48 11, for the year beginning July 1, 1985 (the "1985 Uniroyal Policy"). In 1986, while the policy was in effect, a class of Uniroyal retirees ("Retirees") instituted the Tourangeau litigation [the "Tourangeau litigation" or the "underlying litigation"].[1] In the settlement that was ultimately reached in that litigation, the Retirees and their dependents received lifetime medical benefits and life insurance. The terms of the settlement were approved by the court and were incorporated into a Final Order and Judgment in 1987 (the "Consent Judgment"). The Consent Judgment provides, inter alia, that "neither [Uniroyal] nor its successors, assigns or indemnitors shall terminate or materially reduce the level of benefits provided [therein]."[2] Under the Consent Judgment, the court retained jurisdiction over "the interpretation, implementation, or consummation of the terms and provisions of the [settlement agreement]."

After the underlying litigation was settled, Uniroyal made a claim under the 1985 Uniroyal Policy. That policy was a claims made policy that insured breaches of fiduciary duty so long as "any claim, suit or notification ... be first made during the policy period." In 1988, National Union and Uniroyal reached a settlement as to the amount to be paid on Uniroyal's claim. In exchange for National Union's payment, Uniroyal signed a Receipt and Release (the "Release"). The Release provides:

> in consideration of National Union paying to Uniroyal, Inc. the sum of [$2,425,-000], in compromise and full settlement of all claims that Uniroyal, Inc., any of its subsidiaries, and any individual plan or Trustee insured under the said Pen-

1. Familiarity with the facts in the underlying litigation is presumed.

2. In October 1985, Uniroyal spun off its tire business into Uniroyal Tire ("Tire"), a separately incorporated subsidiary of another spun-off corporation, Uniroyal Holding Co., which was created solely to own stock of Tire. Tire assumed many of Uniroyal's commitments and liabilities arising out of its tire business, including those relating to the retirement benefits of the Retirees. Specifically, Tire and Uniroyal executed an Assumption of Liabilities and Indemnification Agreement pursuant to which Tire assumed liabilities "which may arise under any ... pension, postretirement, health, accident, disability and survivor benefit plans or programs." Tire also agreed to "indemnify Uniroyal from any losses, liabilities, claims, damages, costs and expenses ... arising out of or related ... to the obligations and liabilities ... assumed by Tire." According to the terms of that agreement, Uniroyal was entitled to conduct and control the defense and settlement of the Tourangeau litigation. *See Tourangeau v. Uniroyal, Inc.*, 101 F.3d 300, 303 (2d Cir. 1996). Tire was not a defendant in the Tourangeau action.

Approximately one year later, Uniroyal transferred Tire to a partnership owned jointly by Uniroyal and Goodrich. The name of the partnership was Uniroyal–Goodrich Tire Co. This entity was later recapitalized and incorporated and, in 1989, was acquired by Michelin North America, Inc. and became UGTC, Inc. ("UGTC").

sion Trust Liability Policy No. 124 48 11 may have against National Union for legal fees and expenses in connection with said actions, Uniroyal Inc. hereby releases and forever discharges National Union and its successors or assigns, of and from all manner of action and actions, causes of action, suits, claims, sums of money, contracts, controversies, agreements, damages, judgments and demands whatsoever in law and equity which Uniroyal, Inc. its subsidiaries and any other insured may have, or might have had in the future, against National Union under the terms, provisions, indorsements, addendum or conditions of said Policy No. 124 48 11 arising out of, or in connection with the termination of, [the Tourangeau litigation].

In consideration of the foregoing, Uniroyal, Inc. hereby covenants and agrees to indemnify and hold harmless National Union and its successors and assigns, from any claims of entitlement to payments for legal fees and expenses by any other person under said Policy No. 124 48 11 arising out of or, in connection with the termination of, the said [Tourangeau litigation].

In 1994, UGTC, a company owned by Michelin North America, Inc., and the successor to Tire, *see supra* n. 1, proposed an increase in the monthly contribution rates that the Retirees paid for the medical benefits they received under the terms of the Consent Judgment. In response, the Retirees filed a motion to enforce the Consent Judgment and to enjoin the rate increases (the "Enforcement Action"). They claimed that the proposed increases were not authorized because they would materially reduce the benefits they were given in the settlement of the underlying litigation.

In the Enforcement Action, UGTC argued that it was not bound by the Consent Judgment, had not assumed responsibility for vested welfare benefits payable to Retirees, and was free to alter or cancel those benefits in any way it saw fit. In opposition, Uniroyal claimed that UGTC's predecessors had agreed to assume the vested benefit obligations for the Retirees when Uniroyal's tire business was transferred to UGTC's predecessors. This court agreed with Uniroyal and held that, based on the various agreements between Uniroyal, Tire and UGTC, UGTC was bound by the Consent Judgment. Its decision was affirmed by the Second Circuit. *See Tourangeau v. Uniroyal*, 101 F.3d 300 (2d Cir. 1996) (finding that UGTC was bound by the Consent Judgment even though it was not a party to the underlying litigation because "Uniroyal and UGTC's predecessor agreed that UGTC's predecessor would be bound by the outcome of the underlying litigation."). The Enforcement Action was ultimately settled.

Thereafter, Uniroyal filed a complaint against Michelin seeking indemnification of the legal fees and expenses that Uniroyal incurred in the Enforcement Action. Michelin filed a third-party complaint against National Union under a fiduciary and administrative liability policy that National Union issued to Michelin in 1994 (the "1994 Michelin Policy").[3] In that action, Michelin seeks legal fees and costs it incurred in the Enforcement Action. In response, National Union filed a counterclaim against Michelin and a cross claim against Uniroyal. In the cross claim, National Union alleged that the Release Uniroyal issued to National Union in 1988, obligates Uniroyal to indemnify National Union for the expenses Michelin incurred in the Enforcement Action.

---

**3.** Prior to instituting suit in 1995, Michelin made a claim under the 1994 Michelin Policy. National Union denied the claim on the ground that the policy provides that National Union is not liable for any loss in connection with any claim "alleging, arising out of, based upon or attributable to any pending or prior litigation ... or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation." National Union maintained that Michelin's claims were deemed to have arisen under Uniroyal's 1985 Policy.

Uniroyal now moves to dismiss National Union's cross claim.

## DISCUSSION

Uniroyal maintains that National Union's cross claim against it must be dismissed because the Release is unambiguously limited to claims made under the 1985 Uniroyal Policy. It contends that there is nothing in the 1988 Release that obligates it to indemnify National Union for payments that National Union might have to make to Michelin under the 1994 Michelin Policy. Uniroyal further asserts that the 1988 Release only obligates it to indemnify National Union "from any claims of entitlement to payments for legal fees and expenses by any other person under [the 1985 Uniroyal Policy] arising out of or, in connection with the termination of the said [Tourangeau action]."

In opposition, National Union maintains that Michelin's claim under the 1994 Michelin Policy for attorney's fees incurred in the Enforcement Action is actually a claim under the 1985 Uniroyal Policy and is governed by Uniroyal's Release. It further claims that the Release obligates Uniroyal to indemnify National Union for Michelin's claim because the Enforcement Action is an action arising out of or in connection with the termination of the Tourangeau action. In addition, National Union also claims that the motion to dismiss is premature.

### A. Timeliness of Uniroyal's Motion To Dismiss

National Union says that Uniroyal's motion to dismiss is premature because the meaning and intent of the Release is intertwined in the complex arrangements between Uniroyal, Michelin and National Union that are in dispute in this action. It asserts that the court can not determine the rights of the parties under the Release without determining the other issues and without giving consideration to the provisions of the 1985 Uniroyal Policy and the 1994 Michelin Policy. The court disagrees.

National Union's argument would only be viable if the Release was ambiguous and extrinsic evidence was necessary to determine its meaning and intent. However, because the court finds that the language in the Release is unambiguous, it must construe it as a matter of law without resort to extrinsic evidence, and that is a proper issue on a motion to dismiss. *See Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys. L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000) (noting that where a commercial contract is unambiguous, its interpretation and construction presents only questions of law).

### B. The Unambiguous Language of the Release

The Release states that Uniroyal releases and discharges National Union from all claims that it had or might have had in the future under the 1985 Uniroyal Policy "arising out of or, in connection with the termination of the [Tourangeau litigation]." It further states that Uniroyal "covenants and agrees to indemnify and hold harmless National Union ... from any claims of entitlement to payments for legal fees and expenses by any other person under [the 1985 Uniroyal Policy] arising out of or, in connection with the termination of, the said [Tourangeau litigation]." National Union contends that this language requires Uniroyal to indemnify it for Michelin's claim under the 1994 Michelin Policy for legal fees incurred in the Enforcement Action.

The language of the Release is plain and unambiguous and does not support National Union's interpretation of its terms. *See Pesino v. Atlantic Bank of N.Y.*, 244 Conn. 85, 91–92, 709 A.2d 540 (1998) (stating that the court must not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity). Because of this, its intent is to be ascertained by a fair and reasonable construction of its written words and its language must be accorded

its common, natural, and ordinary meaning and usage. *See Lawson v. Whitey's Frame Shop,* 241 Conn. 678, 686, 697 A.2d 1137 (1997). In so doing, the court finds that the indemnification clause was not intended to govern Michelin's claim under the 1994 Michelin Policy or to subsequent litigation under the Consent Judgment.

Michelin's claim is not a claim made under the 1985 Uniroyal Policy. It is a claim under a fiduciaries and administrator's liability policy that National Union issued to it in 1995. The 1985 Uniroyal Policy is separate and distinct from the 1994 Michelin Policy. The two policies were issued to different insureds. They insure different risks—the 1985 Uniroyal Policy is a Pension Trust Liability Policy, while the 1994 Michelin Policy is a Pension and Welfare Benefit Plan Fiduciaries and Administrator's Policy. Michelin is not an insured under the Uniroyal Policy. The Uniroyal Policy was a claims made policy. It insured breaches of fiduciary duty so long as a claim was first made during the policy period. Michelin's claim was made in 1995 and was not "first made" during the policy period of the 1985 Uniroyal Policy.

Moreover, Michelin's claim does not arise under and is not connected with the termination of the Tourangeau litigation. Under its common and ordinary meaning, the word termination means to close, bring to an end or conclude. *See Webster's Third New Internat'l Dictionary of the English Language* (1981). The Tourangeau litigation was brought to an end or concluded with the settlement agreement and the entry of the Consent Judgment in 1987. The finality of the Consent Judgment is not affected by the fact that the court retained jurisdiction to enforce its provisions.

Both National Union and Uniroyal are sophisticated commercial parties with equal bargaining power and both were represented by competent counsel when the Release was drafted and executed. If they had intended the Release and its indemnification provision to govern the rights and obligations of other entities under different policies or in future disputes arising under the Consent Judgment, they could have chosen words that would have clearly conveyed that intent. But they did not do so, and this court does not have the power to rewrite the Release to include such language.

## CONCLUSION

For the foregoing reasons, Uniroyal's motion to dismiss the cross claim of National Union [doc. # 459] is GRANTED.