[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO MODIFY PLAINTIFF'S MOTION FOR CONTEMPT
Defendant John B. Nano wants this court to modify the parties' dissolution judgment by reducing his alimony obligation from $800.00 per week to $1.00 per year. Plaintiff Barbara Taggert Nano, on the other hand, wants this court to find the defendant in contempt of court for his having failed to make alimony payments since May 29, 2000. She also requests an award for attorney's fees. For the reasons stated below, the court denies the motion to modify the alimony obligation, finds the defendant is in contempt of court, and awards the plaintiff counsel fees CT Page 7247 in the amount of $6,000.00.
 I
The court will first discuss the defendant's motion to modify the judgment (pleading #131). When the court, Gordon, J., dissolved the parties' marriage on July 13, 1990, it incorporated by reference their separation agreement, which provides for the payment of periodic alimony. The court, Ballen, J., modified the alimony provisions of the judgment on July 24, 1992, when it approved the parties' written stipulation that provides, in pertinent part, as follows:
 6.0. . . . the Husband shall pay to the Wife as alimony the amount-of $800 per week, until she dies, remarries or cohabits as defined by Connecticut General Statutes such amount to be non-modifiable, except that the court, upon application of the Husband, may modify and thereby decrease the Husband's obligation hereunder in the event the Husband:
a. . . .
 b. voluntarily, at a normal retirement age, retires or involuntarily retires from employment resulting in a substantial reduction in earnings or benefits under circumstances which the court finds should result in such modification.
The defendant seeks a modification of the judgment on the ground that he is retired from work. He asserts that retirement at his age, fifty-seven, is reasonable given his efforts in looking for employment since the termination of his last job, his health, and his present wife's income. His claim must be evaluated under the provisions of the separation agreement, as modified.
The parties' agreement" "was ordered incorporated . . . into the dissolution decree. A judgment tendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract. See Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837
(1980); Albrecht v. Albrecht, 19 Conn. App. 146, 152, 562 A.2d 528, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). . . .' A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Lawson v. Whitey's FrameCT Page 7248Shop, 241 Conn. 678, 686, 697 A.2d 1137 (1997). Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Levine v. Massey,232 Conn. 272, 277, 654 A.2d 737 (1995)." Issler v. Issler, 250 Conn. 226,234, 737 A.2d 383 (1999).
The judgment provides, first of all, that alimony is "to be non-modifiable, except that the court, upon application of the Husband, may modify and thereby decrease the Husband's alimony obligation in the event the Husband . . . voluntarily, at a normal retirement age,retires. . . ." (emphasis added). The word "normal" is defined in Webster's Third New International Dictionary (1966) as "approximating the statistical norm or average . . . consistent with the social norm." While a small percentage of persons in the work force who have been financially successful may retire at age fifty-seven or younger, it is common knowledge that the average retirement age is over fifty-seven. The defendant has not attained a normal retirement age.
The judgment also provides that the court may decrease the defendant's alimony obligation in the event the defendant "involuntarily retires fromemployment resulting in a substantial reduction in earnings or benefitsunder circumstances which the court finds should result in suchmodification." (Emphasis added). Before the court may consider whether the circumstances warrant a modification, the defendant must show that a substantial reduction in his earnings or benefits has been caused by involuntary retirement from employment. The defendant has not shown that he is involuntary retired" from "employment" or that his unemployment status is under circumstances that should result in modification.
The defendant has an educational background is engineering and finance that includes a masters degree in business. At the time of the divorce, the defendant was earning $160,000.00 a year as the chief financial officer of Dictaphone Corporation. In 1993, he ended his employment with Dictaphone and obtained a position with World Tableware at a yearly salary that was over $180,000.00. In 1994, he left World Tableware and joined Sunk Yong America as executive vice-president and chief financial officer. He stayed at Sunk Yong for five years where he earned a yearly salary of $210,000.00. Early in 1999, the defendant obtained a position as chief financial officer with Conagra, Inc. in Omaha, Nebraska. At Conagra, his base salary was $200,000 a year. This employment relationship was terminated by Conagra in August of 1999. For tax year 1999, the defendant reported on his federal income tax return wages and salary of $539,000.00, which amount included severance pay. Since August of 1999, the defendant has circulated resumes and interviewed with CT Page 7249 potential employers. He has not, however, obtained new employment. The health conditions that the defendant testified about do not appear in any significant way impinge on his ability to work.
From the foregoing, the court concludes that the defendant has the ability to work at gainful employment in the financial sector of the economy. While his last employment relationship ended independently of his own volition, he still has the wherewithal to engage his time and energies in his customary vocation, although not, perhaps, as a chief financial officer. Accordingly, the court concludes that the defendant is not involuntarily unemployed.
Assuming, arguendo, that the defendant is involuntarily unemployed, the court nevertheless finds that the circumstances do not warrant a modification. The defendant is fifty-seven years old. He has held substantial employment positions. He still has the capacity to be gainfully employed but has chosen a different life style. Since the parties' divorce, the defendant has remarried. His wife, who is certified public accountant, works and pays the household expenses. He takes care of a seven year old child who is issue of the new marriage. He, his wife and child live in Stamford, where they rent an apartment in a single family house owned by his wife's parents.
In 1990 and 1992, the defendant and his former wife entered into contractual obligations that they requested this court to incorporate into a judgment of this court. The defendant's motion to modify the alimony obligation that is set forth in the judgment is denied.
 II
The court will next discuss the plaintiff's motion for contempt. The defendant stopped paying alimony on May 29, 2000. As of April 12, 2001, he was $37,600.00 in arrears. See Exhibit K.
The defendant contends that his failure to comply with the judgment is not wilful because he lost his job with Conagra. It was in August of 1999 that the defendant lost his job. While a change in the defendant's earnings initially occurred without fault on his part, the defendant has not shown that his earning capacity has changed substantially. Considering the defendant's skills, age, and health, he has had sufficient time to obtain new employment. Overtime, the defendant's ineffective job search has arisen to a wilful failure to pay alimony. Accordingly, the defendant is found to be in wilful violation of the provision in the judgment that obligates the defendant to pay the plaintiff $800.00 a week as alimony. CT Page 7250
Article XI.1 of the parties' separation agreement provides that "if either party shall breach this Agreement, or any part of it, the party responsible for the breach shall be liable for the counsel fees of the other party." See also, General Statutes § 46b-87. Under the circumstances, an award to the plaintiff for attorney's fees is appropriate.
At the time of the divorce, the plaintiff was earning $250.00 gross a week as a furniture sales person. Presently, she earns $228.00 gross a week as a furniture sales person and receives a stipend for assisting her ailing father. Since the defendant stopped paying alimony, the plaintiff has gone deeper into debt. She has borrowed money from her friends and her father. After reviewing her counsel's affidavit with respect to counsel fees, the court orders the defendant to pay the plaintiff $6,000.00 in order to assist her in paying her attorney's fee.
Presently, the defendant does not have assets with which to pay his obligations. He has expended substantial funds on his new family since 1998. Hence, employment and periodic payments are mandatory. Commencing June 29, 2001, the defendant is to resume paying the plaintiff $800.00 per week as alimony, $50.00 per week on the arrearage of $37,600.00, and $50.00 on the attorney's fee obligation.
 It is so ordered. THIM, J.