Hugo Vinicio **HERNANDEZ**, Plaintiff,

v.

**CAVALIERE CUSTOM HOMES, INC.** n/k/a Cavaliere Custom Contractors, Inc., Defendant/Third–Party Plaintiff

v.

**Michael De Vesta d/b/a Carpentry Concepts, Third–Party Defendant.**

Civil No. 3:04CV01931 (AWT).

United States District Court, D. Connecticut.

Sept. 24, 2007.

Anthony M. Defazio, Vergilis, Stenger, Roberts, & Davis, LLP, Wappingers Falls, NY, Frederic P. Rickles, Gilbride, Tusa, Last & Spellane, Greenwich, CT, Gerald A. Vergilis, Vergilis, Stenger, Roberts, & Davis, LLP, Wappingers Falls, NY, for Plaintiff.

Alfred J. Cali, Klein & Becker, LLC, Francis J. Drumm, III, Robert G. Oliver, Mulvey, Oliver & Gould, New Haven, CT, for Defendant/Third–Party Plaintiff.

Andrea K. Hallier, Kelly P. Mai, Tyler, Cooper & Alcorn, New Haven, CT, Christopher L. Ulrich, Cummings & Lockwood, Stamford, CT, Michael T. McCormack, Tyler Cooper & Alcorn, Hartford, CT, for Third–Party Defendant.

### RULING ON DE VESTA'S MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Third party plaintiff Cavaliere Custom Homes, Inc., n/k/a Cavaliere Custom Con-

tractors, Inc. ("CCH") has filed an Amended Third Party Complaint against third party defendant Michael De Vesta, d/b/a Carpentry Concepts ("De Vesta") setting forth claims for: common law indemnification (Count One); breach of contract arising from De Vesta's alleged negligence (Count Two); breach of contract arising from De Vesta's alleged failure to maintain insurance coverage for the benefit of CCH (Count Three); and common law indemnification based on a bailment (Count Four).

De Vesta has moved for summary judgment on all counts on the basis of the exclusivity provision of the Workers' Compensation Act, Conn. Gen.Stat. § 31–284 *et seq.*, and the terms of the contract between CCH and De Vesta. CCH has agreed to voluntarily dismiss Count Three. For the reasons set forth below, De Vesta's motion for summary judgment is being granted as to the remaining counts.

## I. FACTUAL BACKGROUND

In June 2003, CCH and Michael De Vesta entered into a contract ("the Contract") pursuant to which De Vesta would perform certain framing work in connection with CCH's construction of a single family residence on property that it owned located at 10 Arthur's Court, Newtown, Connecticut.

In connection with the project, Gerald Cavaliere ("Cavaliere"), the president of CCH, offered De Vesta the use of a Lull Lift Truck (the "Lull") owned by CCH. Cavaliere asked De Vesta if he knew how to use the Lull, and briefly showed him how the Lull went up and down. Cavaliere also provided De Vesta a platform for the Lull. De Vesta and his employees used the Lull and the platform while doing the framing work.

On July 30, 2003, plaintiff Hugo Hernandez ("Hernandez") was standing on the platform, which was attached to the raised forks of the Lull approximately 40 feet in the air, while Silvio Yllesca was moving the Lull. As Yllesca moved the Lull, the Lull's right wheels went down, the Lull flipped onto its side, and Hernandez was ejected from the platform. Hernandez fell to the ground and sustained serious personal injuries. CCH contends that the individuals operating the Lull were employees of De Vesta.

Hernandez commenced this negligence action against CCH, and CCH filed a third party complaint against De Vesta. In opposing De Vesta's motion for summary judgment, CCH relies on certain provisions in Articles 6 and 7 of the Contract, which are quoted in the discussion below. The court also deems relevant the provisions of Article 9 of the Contract, which read as follows:

Article 9.   Insurance

9.1   The Contractor will keep in force a Builder's Risk and blanket workman's compensation Insurance Policy on the said property to protect both owner's and Sub–Contractor's interests until construction is completed.

9.2   The Contractor will purchase and maintain property insurance to the full and insurable value of the project, in case of a fire, vandalism, malicious mischief or other instances that may occur.

9.3   Carpentry Concepts shall purchase and maintain needed Workman's Compensation and Liability insurance coverage as required by law and deemed necessary for his own protection for [sic].

Answer and Affirmative Defenses of Cavaliere Custom Homes, Inc. to Amended Verified Complaint ("Answer of CCH") (Doc. No. 43), Ex. A.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

■ When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. As the Court observed in *Anderson*: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000)(quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the non-movant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the non-movant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997)(quoting *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the non-movant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III.  DISCUSSION

### A.  Count One:  Common Law Indemnification

De Vesta argues that it cannot be held liable for Hernandez's injuries that are the subject of the negligence action brought against CCH because Conn. Gen.Stat. § 31–284 provides, in relevant part, that:

An employer shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows, except that compensation shall not be paid when the personal injury has been caused by the wilful misconduct of the injured employee or by his intoxication.  All rights and claims between employer and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment as aforesaid are abolished other than rights and claims given by this chapter, provided nothing herein shall prohibit any employee from securing, by agreement with his employer, additional benefits from his employer for such injury or from enforcing such agreement for additional benefits.

Conn.  Gen.Stat.  Ann.  § 31–284  (West 2003).

█ CCH notes, properly, that there are exceptions to the exclusivity provision in § 31–284.  The Supreme Court of Connecticut has stated:

Contribution or indemnification is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee because of the operation of the exclusive-remedy clause.  But if the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be allowed.  The right to indemnity is clear when the obligation springs from a separate contractual relation, such as an employer-tenant's express agreement to hold the third-party landlord harmless, or a bailee's obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care; but when the indemnity claim rests upon the theory that a 'primary' wrongdoer impliedly promises to indemnify a 'secondary' wrongdoer, the great majority of jurisdictions disallow this claim.

*Ferryman v. City of Groton,* 212 Conn. 138, 144–145, 561 A.2d 432 (1989) (citation omitted).

CCH contends that it had a separate contractual relation, i.e. the Contract, with De Vesta, which makes inapplicable the exclusivity provision of the Worker's Compensation Act.  While conceding that the Contract does not contain an express indemnity provision, CCH argues that several provisions in the Contract, read together, create a duty on the part of De Vesta to indemnify CCH.  CCH relies predominantly on the following provisions of the Contract:

Article 6.    Duties of the Sub–Contractor

6.1  All work shall be in accordance to the provisions of the plans and specifications.  All systems shall be in good working order.

6.2  All work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.

6.3  All work shall be performed by individuals performing their said work, as outlined by law.

. . .

Article 7.  Contractor

. . .

7.2 The Contractor will not assume any liability or responsibility, nor have control over or charge of construction means, methods, techniques, sequences, procedures, or for safety precautions and programs in connection with the project, except through the project manager.

Answer of CCH, Ex. A.

CCH contends that these provisions incorporate OSHA regulations; OSHA cited De Vesta for 8 violations of safety regulations, and De Vesta agreed to pay penalties for each of the violations. CCH also contends that, pursuant to Article 7 of the Contract, De Vesta assumed responsibility for safety precautions and programs.

■■■ Indemnity is an obligation owed by one party to another whereby the indemnitor agrees to make good any loss or damage incurred by the indemnitee while acting at the indemnitor's request or for his benefit. 41 Am.Jur., *Indemnity* § 1 (2007). Whether De Vesta has a duty to indemnify CCH based on the language of the Contract is a matter of contract interpretation.

A contract must be construed to effectuate the intent of the parties . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.

*Lawson v. Whitey's Frame Shop,* 241 Conn. 678, 686, 697 A.2d 1137 (1997) (quoting *24 Leggett Street Ltd. Partnership v. Beacon Industries, Inc.,* 239 Conn. 284, 295, 685 A.2d 305 (1996)).

■■■ There is no express undertaking by De Vesta in the Contract to indemnify CCH for claims or injuries arising out of De Vesta's acts or omissions in performance of the Contract. In addition, giving the language of the Contract a fair and reasonable construction based on the words used, there is also no implied obligation on the part of De Vesta to indemnify CCH. The language in Articles 6 and 7 emphasized by CCH speaks to the existence of a contractor/subcontractor relationship and their respective responsibilities and duties. None of the language is ambiguous, and the mere existence of a contractor/subcontractor relationship does not create an implied duty to indemnify. Moreover, Article 9 of the Contract deals more specifically with the risks arising out of injuries to workers, and while Section 9.1 requires CCH to maintain insurance to protect "both owner's and Sub–Contractor's interests," Section 9.3 requires De Vesta to maintain only "Workman's Compensation and Liability insurance coverage as required by law and deemed necessary for his own protection. . . ." Nothing in any of the language of the Contract, particularly when the language of the Contract is read as a whole, implies any undertaking by De Vesta to indemnify CCH, as opposed to being solely responsible for its own acts or omissions. This is a situation where any ambiguity in the contractual language would have to emanate from CCH's "subjective perception of the terms." *Lawson,* 241 Conn. at 686.

For these reasons, the court concludes that the Contract does not create an inde-

pendent contractual duty for De Vesta to indemnify CCH. Thus, De Vesta is entitled to summary judgment on Count One.

## B. Count Two: Breach of Contract

In Count Two, CCH alleges that De Vesta was negligent and its negligent conduct constituted a breach of the Contract. De Vesta argues that CCH's breach of contract claim is simply an effort to avoid the exclusivity provision of the Worker's Compensation Act and obtain indemnification for the claims Hernandez brings against CCH; it also argues that CCH's claim that De Vesta's negligence constituted a breach of contract is not supported by the language of the Contract.

CCH contends that the Contract created an independent legal duty on the part of De Vesta to CCH and breach of that independent legal duty provides the basis for contractual indemnification. CCH points to no language in the Contract beyond that upon which it relies with respect to Count One.

The provision in Article 6.2 stating that all "work shall be completed in a workman like manner" is not sufficient under *Ferryman* to give rise to an independent legal duty. This court adopts the analysis of *Scrivenes v. Pepperidge Farm*, No. CV 92039946S, 1997 WL 15410 (Conn.Super. Jan. 10, 1997). In interpreting *Ferryman*, the court in *Scrivenes* held:

> [I]f an employer ... explicitly agreed to perform its work with due care-that is with regard to ensuring safety at the worksite-then failure to so perform its contract would allow the entity for whom the work is done and who is sued by the ... injured employee to implead the employer, if the employee claims injury as a result of the work not being done with due care. With such an explicit contractual agreement, the party whom the injured employee sues for negligence should be able to implead the employer and in effect say, you, the employer, agreed with me to do the work safely and with due care. You didn't live up to your end of the bargain and your lack of due care was what caused injury to your worker, not anything I did ...
>
> [However,] the agreement that the job be done in a workmanlike manner does not necessarily imply that it be done in a safe manner or with due care ... Even if the court's view is incorrect and the language is ambiguous on this point, given the policy behind the Workers' Compensation Act, this ambiguity should not suffice to withstand a motion to strike. This is especially so because of the policy considerations behind the act. Whenever contractors or subcontractors agree to do a particular job, even if language such as the job must be done in a workmanlike manner is not included, there in fact must be a contractual understanding that the agreed upon work be done in that manner. If language like "workmanlike manner" or that the job be completed "to comply with industry standards," could remove the protections of the act for these contractors when one of its employees is injured, what real protection would the act provide. Contractors would in effect be compelled to run the risk of waiving their protection under the act merely because of the inclusion of a contract provision that created no real independent obligation explicitly referencing the act but only defined a contractual commitment it was already assuming when it agreed to do a specific job.

*Id.* at *2–3. *See also Maslansky v. First Assembly of God*, No. CV010343545S, 2003 WL 1090578 at *4 (Conn.Super. Feb. 25, 2003)(agreement to perform the work "with *due care* and in a reasonably safe and workmanlike manner"

was sufficient to establish the existence of an independent legal relationship and to avoid the exclusive remedy provision of the Workers' Compensation Act); *Britt v. Danziger Development,* No. CV000157399, 2000 WL 1862651 at *3 (Conn.Super. Nov. 27, 2000)(holding that a party who agreed to perform the work "in a *reasonably safe* and workmanlike manner" was also sufficient to establish an independent legal relationship).

Courts have therefore interpreted the exceptions to the exclusivity provision of the Workers' Compensation Act very narrowly. Only an explicit agreement to perform work with "due care" or "in a reasonably safe manner" will give rise to an independent legal duty. Since the Contract contains no such language, no independent legal relationship sufficient to overcome the exclusivity bar and obtain contractual indemnification arose.

▬▬ Nor is the provision in Article 7.2 stating that the "Contractor will not assume any liability or responsibility, nor have control over or charge of construction means, methods, techniques, sequences, procedures, or for safety precautions and programs in connection with the project, except through the project manager" sufficient under *Ferryman* to give rise to an independent legal duty. This provision contains a disclaimer of liability on the part of the CCH rather than an affirmative agreement by De Vesta to assume responsibility for safety precautions and programs in connection with the project. Without a more explicit statement, no independent legal duty can be inferred. "[A] promise to indemnify one against his own negligence may not be found by implication but rather 'must be expressed in clear and unequivocal language.'" *Montanez v. Lewis Boyle, Inc.,* No. CV 91 0501329S, 1993 WL 544658 at *2 (Conn.Super. Dec. 23, 1993). Thus, a "disclaimer clause . . . does not impose an independent

duty . . . to indemnify the third-party plaintiff." *Id.*

The court concludes there is nothing in the language of the Contract that could support a conclusion that negligence by De Vesta constituted a breach of contract. Thus, De Vesta is entitled to summary judgment on Count Two.

### C.  Count Four:  Common Law Indemnification (Bailment)

▬▬ In Count Four, CCH contends that the loan of the Lull to De Vesta created a bailment relationship pursuant to which an independent duty to indemnify CCH arose.  Assuming *arguendo* that the loan of the Lull created a bailment relationship, the court concludes, based on *Laster v. Davis Waste Mgmt., Inc.,* D.N. CV900110897 S, 1994 WL 723068 (Conn.Super. Dec. 22, 1994), that, as a matter of law, no duty to indemnify CCH arose from that relationship.

*Laster* involved a situation similar to this case, and the court finds the reasoning in *Laster* persuasive and dispositive on the issue here:

In *Ferryman v. City of Groton,* [212 Conn. 138, 561 A.2d 432 (1989)], our Supreme Court held that the exclusive remedy provision of the Workers' Compensation Act, C.G.S. § 31–284a, bars a defendant from bringing a third party action for indemnification against the plaintiff's employer based solely on the theory of "active/passive." The court held that the defendant can only seek indemnification from the plaintiff's employer, based on an independent legal relationship between the defendant and the employer.

Not any independent relationship will suffice to avoid the exclusive remedy provision. In order to support a third party claim for indemnification, the independent relationship must be one pursu-

ant to which the employer owes the third party plaintiff an independent duty.

*Ferryman,* at 143–146, 561 A.2d 432; *Ranta v. Bethlehem Steel Corp.,* 287 F.Supp. 111, 113 (D.Conn.1968) (The Workers' Compensation Act is not a bar to indemnification "where such right can be predicated on some legal relationship between the third party and the employer *giving rise to a duty on the part of the employer to the third party which is either contractually or tortiously breached.*") [Emphasis added].

Under the active/passive negligence doctrine, indemnification is predicated on the duty the employer owes to its employees to use reasonable care to protect them from harm. "[T]he origin of the action is in the injury itself and the circumstances surrounding it, and the liabilities that it creates and the indemnity obligation itself spring exclusively from the comparison of the relationships of the two parties [i.e., the third party plaintiff and third party defendant] to that injury." 2B, Larson, Workmen's Compensation Law, § 76.13 at 14–728. Therefore, a claim for indemnification predicated solely upon the employer's active negligence, i.e. the breach of a duty the employer owed its employees, is barred by the exclusive remedy provision. Ferryman at 144–145. In order to circumvent the exclusive remedy clause, a third party action for indemnification cannot be "on account of" or "because of" the injury; rather it must be on account of a separate obligation owed by the employer to the third party. 2B Larson, Workmen's Compensation Law, § 76.32 at 14–779; § 76.90 at 14–978.

While under Ferryman, alleging a relationship which could "contain" an independent duty is sufficient, see also P.B. § 110, the court finds, as a matter of law, that neither a lease nor a bailment in and by itself contains such a duty ...

Davis' claim for indemnification is based on Bernard's alleged negligent supervision of Bernard's employees' use of the dumpster. Davis alleges that Bernard allowed Laster to stand inside the dumpster when it knew or should have known it was not safe to do so. Davis further alleges that Bernard failed to caution or instruct Laster on the use of the dumpster. Thus, since under Ferryman, Davis cannot base its claim on a duty Bernard owed to its employees, Davis must allege and prove that, as an incident of the lease or bailment itself, apart from the terms of the contract, Bernard owed Davis a duty to caution, instruct and supervise its employees in the use of the dumpster so as to protect Davis from liability.

No such common law duty arises from an ordinary lease or bailment relationship. Davis cites no authority to the contrary, nor has the court been able to discover any. In fact, our Supreme Court held to the contrary in *Therrien v. Safeguard Manufacturing Company,* 35 Conn.Supp. 268, 408 A.2d 273 (1979), aff'd 180 Conn. 91, 429 A.2d 808 (1980).

*Id.* at *2–4.

Similarly, the evidence here would support at most the finding of an ordinary bailment relationship. It cannot support a conclusion that as an incident of a bailment relationship itself, and apart from the terms of the Contract, De Vesta owed CCH (as opposed to De Vesta's employees) a duty of reasonable care with respect to the use of the Lull so as to protect CCH from liability arising out of injury resulting from improper use of the Lull. Thus, De Vesta is entitled to summary judgment on Count Four.

## IV. CONCLUSION

For the reasons set forth above, the Third Party Defendant's Motion for Summary Judgment (Doc. No. 67) is hereby GRANTED. Judgment in favor of Michael De Vesta d/b/a Carpentry Concepts shall enter with respect to Counts One, Two, Three, and Four of the Amended Third Party Complaint.

It is so ordered.